**Ex parte MONTI.**

No. 1249.

United States District Court

E. D. New York.

July 22, 1948.

J. Vincent Keogh, U. S. Atty. of Brooklyn, N. Y. (Mario Pittoni, Asst. U. S. Atty., of Brooklyn, N. Y., and Victor Woerheide, Sp. Asst. Atty. Gen., of counsel), for the United States.

Lloyd Paul Stryker, of New York City (Harold Shapero, of New York City, of counsel), for petitioner.

KENNEDY, District Judge.

This is a petition praying for the issuance of a writ of habeas corpus to the warden of the Federal House of Detention commanding him to bring before the court the body of the petitioner. Petitioner's counsel have deliberately selected this mode of procedure (by motion).

The petitioner was on January 26, 1948, taken into custody on a warrant of arrest

based upon a complaint charging that petitioner had committed the crime of treason, 18 U.S.C.A. § 1, in that beginning on October 13, 1944, and continuing until May 8, 1945, he had adhered to the government of the German Reich at Milan, Italy, and at Frankfurt am Main, Wetzlar, Berlin, and Koenigswusterhausen, Germany. Petitioner now seeks a writ of habeas corpus to obtain his discharge on the ground that there is no jurisdiction in this court over the offense alleged in the complaint; in the event jurisdiction is held to exist, he asks that, nevertheless, he be discharged on bail.

Jurisdiction over the offense of treason committed in foreign lands exists, if at all, by virtue of the provisions of section 41 of the Judicial Code, 28 U.S.C.A. § 102, which reads as follows:

"Offenses on the high seas. The trial of all offenses committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district where the offender is found, or into which he is first brought."

As I understand his argument, petitioner does not contend that Congress could not constitutionally provide for the trial and punishment of American citizens who have committed federal crimes in foreign lands. His argument is that by the language of the statute just quoted, Congress has not done so, except where such crimes have been committed on the high seas or other navigable waters. Petitioner would have the rule of ejusdem generis applied to the statute, and says that if this is done, the words "elsewhere out of the jurisdiction of any particular State or district" must be read as if the words "on admiralty waters" were interpolated after the word "elsewhere." Under that construction the federal courts would have no jurisdiction in a case, for example, over an American consul who accepted a bribe in foreign territory. It is said that this view finds support in Ex parte Bollman, 1807, 4 Cranch 75, 136, 2 L.Ed. 554, 574, where Chief Justice Marshall construed a statute (Act of April 30, 1790, c. 9, § 8) from part of which section 41 was derived. In the Bollman case at the place cited this sentence is found:

"The law read on the part of the prosecution is understood to apply only to offenses committed on the high seas, or in any river, haven, basin or bay, not within the jurisdiction of any particular state."

Petitioner also cites in support of this contention United States v. Alberty, Circuit Court, D. Arkansas, 1884, 24 Fed.Cas. page 765, No. 14426, Hempst. 444; United States v. Starr, Circuit Court, D. Arkansas, 1846, 27 Fed.Cas. page 1296, No. 16379, Hempst. 469; United States v. Ivy, Circuit Court, D. Arkansas, 1847, 26 Fed.Cas. page 93, No. 15451 Hempst. 562; United States v. Ta-wan-ga-ca, D.C.D.Arkansas, 1836, 28 Fed.Cas. page 18, No. 16435, Hempst. 304; and United States v. Chapman, D.C. W.D.Wash., N.D., 1926, 14 F.2d 312, 313. All of these cases, with the exception of the Chapman case, were murder cases. Therefore, generally speaking, they were ruled by a very specific jurisdictional limitation in the applicable statutes. In the Alberty case, Justice Daniel does, it is true, deal with a statute verbally much the same as section 41. However, the criterion of jurisdiction used by him is the nature of the crime. He does not say that the statute forbids the prosecution of all crimes committed on land outside the jurisdiction of any state. He says that some of the offenses of which the statute was treating were of a character which might be consummated within the limits of the states and districts of the Union. He then goes on to say that "Others, as for instance those touching the maritime rights of the nation and its citizens, were of a nature to be committed beyond those limits, such as the destruction of ships on the high seas and in foreign ports, and the abandoning of seamen in foreign countries; for these delinquencies it was necessary to designate a forum, and public convenience pointed to the state or district in which the offender might be apprehended, or that into which he should happen to be first brought." 24 Fed.Cas. pp. 766, 767, No. 14426, Hempst. Certainly treason is a crime of such nature that it may be committed beyond the limits of any state or district, and it is to be observed that Justice Daniel does not restrict his classification to admiralty crimes: he merely uses them as examples. As for the

Chapman case, that is to be explained on the basis that a United States Court for China had been created by Congress, Act of June 30, 1906, 34 Stat. 814, 22 U.S.C.A. § 191. The crime was clearly within the jurisdiction of that court, and for that reason Judge Dietrich refused to apply section 41, as the defendant, resisting removal to China, urged him to do.

Judge Ford recently dealt with precisely the same contention raised here. United States v. Chandler, D.C.D.Mass., 1947, 72 F.Supp. 230, 236. He reached the conclusion that all of the cases cited, including the Bollman case, were based upon the fact that the offenses were committed in a "district" of the United States, and in a place where a tribunal existed in which the offenses could be tried. Petitioner says that this reasoning is obviously wrong, because some of the cases cited dealt with offenses committed, for example, in the territory of Louisiana, in the Indian country, and in China. But I do not believe that Judge Ford was using the word "district" in the narrow sense; he meant rather "area." In other words, I think he was saying that the cases in question all involved situations under which there was a local tribunal, connected with the judicial system of the United States, which had power to deal with the offenses. Manifestly that is not so in the case at bar, because the offenses charged against the petitioner obviously did not violate the municipal law of Germany or Italy. Judge Ford, in the Chandler case, overruling a contention just like the one made here, relies heavily on what he calls a dictum in the case of United States v. Bowman, 1922, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149. Petitioner answers this by saying that a remark made in passing, not necessary to a decision, is inadequate support for any subsequent decision.

I think both sides are clear on the point that there is no obstacle of any kind, constitutional or otherwise, to the enactment and enforcement of a federal statute for the punishment of offenses committed within the jurisdiction of another sovereign, at least as far as American citizens are concerned. Cf. United States v. Flores, 1933, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086. The question is, as I have said, whether

Congress has in fact done so by section 41. It must be admitted that a cursory reading of the opinion of Chief Justice Marshall in Ex parte Bollman, supra, 4 Cranch 74, 136, 2 L.Ed. 554, 574, seems to support petitioner's contention. However, the portion of the statute from which section 41 of the present Judicial Code was derived was in 1807 part of a longer statute which dealt generally with crimes committed outside the jurisdiction of any state, and specifically with the crime of murder and robbery on the high seas or in admiralty waters. The Chief Justice, in the language upon which the petitioner so heavily relies, paraphrased that portion of the statute dealing specifically with murder, and ignored the argument of United States Attorney Jones (4 Cranch 116, 2 L.Ed. 568) to the effect that the specific words of limitation ("upon the high seas, or in any river, haven, basin or bay, out of the jurisdiction of any particular state," 1 Stat. 113) were applicable only to the section of the act dealing with murder and robbery, and not to the general provision for the trial of other crimes out of the jurisdiction of any state. Whatever may be the merit of that argument, it is now true that section 41 of the Judicial Code, here under consideration, has been divorced from the provision governing the trial of murder committed in the admiralty waters, and I doubt that Ex parte Bollman rules the construction of the statute as it now stands. Certainly, at least in dictum, the Supreme Court did not think so (in the Bowman case).

My conclusion is that section 41 as it now stands is broad enough to confer jurisdiction on the federal courts of the district where the offender is first brought over American citizens who have committed the crime of treason against the United States in territory under a foreign sovereign. Certainly the presence of a local tribunal, adequate to deal with the crime, which Chief Justice Marshall stressed in the Bollman case, is not a feature of this case.

If I am right in this conclusion, then the objection to the trial by a Brooklyn jury of a defendant charged with the commission of a crime in Germany is not important, because the requirements of the Constitution

(Amendment 6) have been fulfilled, although the crime was not committed within the Eastern District of New York. Since the offender was first brought here (sec. 41), that is the district "previously ascertained by law."

Were the grounds just dealt with used in support of a writ of habeas corpus, I would dismiss it, And, accordingly, I must deny the application, under the procedure here followed, for the issuance of a writ.

As for the question of bail, I find myself in a quandary. Clearly the petitioner may not be admitted to bail, unless in the discretion of the court, which must give "due weight to the evidence and to the nature and circumstances of the offense" (Federal Rules of Criminal Procedure, rule 46(a) (1), 18 U.S.C.A. following section 687), since the crime is punishable by death. Were the defendant to make bail and then to flee to Canada, he undoubtedly could not be extradited. He has, according to the government, in fact expressed an intention to leave the United States. On the other hand, long after petitioner was aware of the possibility that he might be apprehended on a treason charge, he remained in the United States. He has an honorable discharge from the United States Army. His family are, apparently, good citizens. And worst of all, he has been held for five months without a trial.

In response to my suggestion that this was too long a time, counsel for the government suggested that the nature of the case was such that extensive preparation was required. That may be so. But there must come a time when very long incarceration on a mere complaint deprives a prisoner of a constitutional right. I have been assured by the government that proceedings before a grand jury are likely to be had next month and that if an indictment is found, the government will be ready for trial on the evidence used before the grand jury. If that be so, there could be a trial early this fall, if the defendant is prepared to proceed. In that situation I decline to admit the petitioner to bail without prejudice to a further application this fall, should the petitioner be so advised.