Leslie L. DE VEAU, Appellant,

v.

UNITED STATES, Appellee.

Dwayne E. WILSON, Appellant,

v.

UNITED STATES, Appellee.

John HOLMES, Appellant,

v.

UNITED STATES, Appellee.

Nos. 82–1022, 82–1091.

District of Columbia Court of Appeals.

Argued Oct. 5, 1982.

Decided Dec. 3, 1982.

James McComas, Public Defender Service, Washington, D.C., for appellants.

Judith Hetherton, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Michael W. Farrell and Catherine R. Mack, Asst. U.S. Attys., Washington, D.C., were on the motion, for appellee.

Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., for intervenor.

Before NEBEKER, MACK and PRYOR, Associate Judges.

NEBEKER, Associate Judge:

In these consolidated appeals, the court must address the constitutionality of ordered pretrial detention of defendants charged with first-degree murder.[1] These appellants challenge the constitutionality and the legality of the enactment of an amendment to D.C.Code 1981, § 23–1325(a), as amended, passed as emergency legislation by the Council of the District of Columbia on July 6, 1982.[2] Appellants' challenge focuses on section 4(b) of the legislation that modified § 1325(a) by making pretrial detention without bail applicable to "a person who is charged with murder in the first degree" instead of to "a person who is

---

[1]. Because of the need for expeditious decision, this division, after oral argument, sua sponte requested a vote from the full court on whether these cases should be reheard en banc. The full court declined the sua sponte en banc invitation. Under D.C.Code 1981, § 23–1324(b) and D.C.App.R. 9(a) and 4 III(a)(9), prompt disposition of these appeals is required.

Though they are determined on cross-motions for summary disposition, these appeals have been fully briefed and argued. All three appellants requested expedited consideration.

[2]. The District of Columbia Bail Amendment Emergency Act of 1982, D.C.Act 4–210, 29 D.C. Reg. 3015 (July 16, 1982).

charged with an offense punishable by death."[3] As emergency legislation, this provision remained in effect for 90 days. Because that 90-day period expired on October 7, 1982, the challenge to that emergency legislation and the validity of the Council's declaration of an emergency is now moot. However, because the Council adopted identical legislation in non-emergency form on July 21, 1982,[4] which became effective on August 20, 1982, appellants' challenge to the constitutionality of the pretrial detention amendment is available to them and is not moot. They remain detained pursuant to the permanent amendment.

## I. FACTS

### A. *Leslie de Veau v. United States,* No. 82–1022

On April 20, 1982, the Superior Court found probable cause that appellant Leslie de Veau had committed the offense charged—second-degree murder of her daughter on March 18, 1982. On July 21, 1982, de Veau was indicted for first-degree murder. On August 5, 1982, Chief Judge Moultrie conducted an extensive hearing and granted the government's motion to detain de Veau without bond pending trial pursuant to the recent amendment of D.C. Code 1981, § 23–1325(a). Chief Judge Moultrie listened to counsel's factual representations about de Veau and to his legal arguments concerning the constitutionality of the pretrial detention statute. Chief Judge Moultrie squarely rejected the constitutional challenge to the statute. Both de Veau's attorney and counsel for the government had spoken with de Veau's psychiatrist about her mental condition. Based on their representations concerning de Veau's

unstable mental state, Chief Judge Moultrie concluded that she should be detained without bond pursuant to § 1325(a) because she presented both a risk of flight and a potential danger to herself and to the community. Then, in accordance with de Veau's attorney's request, Chief Judge Moultrie ordered that she be transferred to St. Elizabeths Hospital for a competency examination. Appellant noted her appeal and moved for summary reversal of the pretrial detention order. While her hospital detention may be deemed to be under D.C.Code 1981, § 24–301, she is also detained under § 1325(a), and we treat only the latter aspect of the order.

### B. *Dwayne E. Wilson v. United States,* No. 82–1041

On July 8, 1982, appellant Dwayne E. Wilson was presented on a charge of assault with intent to kill while armed for the July 7, 1982 clubbing and shooting of Clifford Talley. However, because the victim subsequently died, the government moved for pretrial detention without bond. On August 13, 1982, Judge Shuker heard argument concerning the constitutionality of § 1325(a), the legality of its enactment, and the propriety of its application to Mr. Wilson. Judge Shuker rejected the challenge to the statute, and ordered Wilson held without bond "pending Grand Jury." Judge Shuker concluded that pretrial detention was appropriate. He considered Wilson dangerous because the crime was committed after only slight provocation, and because Wilson could pose a danger to witnesses to the crime. Wilson then noted his appeal and moved for summary reversal of the pretrial detention order.

**3.** Because there are no longer any offenses punishable by death in the D.C.Code, the obvious purpose of this amendment was to permit pretrial detention of persons charged with first-degree murder, an offense that once was punishable by death.

**4.** The District of Columbia Bail Amendment Act of 1982, D.C.Act 4–223, 29 D.C.Reg. 3479–83 (August 13, 1982). The amended statute provides: "A person who is charged with mur-

der in the first degree shall be treated in accordance with the provisions of § 23–1321 unless the judicial officer has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, the person may be ordered detained."

**C.** *John Holmes v. United States,* No. 82–1091

■ Appellant Holmes was arrested on August 3, 1982, for the homicide that day of Theodore Chin. Holmes was presented before Judge Doyle, who granted the government's motion to detain Holmes without bond pending trial. On August 13, 1982, Judge Norman found probable cause that Holmes had committed the murder. Then Holmes appealed the pretrial detention order and the probable cause finding.[5] After the record was remanded for clarification, Judge Doyle issued an amended order detaining Holmes pursuant to § 1325(a). He explained that "based on the factors set out in 23 D.C.Code § 1321, no one or more conditions of release will reasonably assure that the defendant will not flee or pose a danger to any other person or to the community." He based his conclusion on the following factors: (1) after Holmes had repeatedly shot the victim, he asked him if he was dead, and when the victim said he was not, Holmes shot him again; (2) probable cause was found; (3) Holmes was unemployed; and (4) Holmes had pending a charge of possession of a dangerous weapon.

## II. CONSTITUTIONALITY OF D.C.CODE 1981, § 23–1325(a), AS AMENDED.

Appellants attack the constitutionality of the recently amended § 1325(a) on a number of grounds, contending that the provision is penal, and that its application to them violates the *ex post facto* clause. They also cite the statutory principle against retroactive application,[6] due process, and equal protection of the law. We treat each in turn.

### A. *Section 1325(a) Is Regulatory*

■ Appellants' claim that ordered pretrial detention under § 1325(a) is penal

forms the linchpin of their argument. They note correctly that if pretrial detention constitutes punishment, then it can only be imposed after an adjudication of guilt with the full panoply of Fifth and Sixth Amendment rights. *United States v. Edwards,* D.C.App., 430 A.2d 1321, 1331 (en banc), *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1981).

■ In *United States v. Edwards,* this court held that ordered pretrial detention under D.C.Code 1981, § 23–1322 of persons charged with a dangerous crime or a crime of violence was regulatory rather than penal, because the purpose of such detention was to prevent flight or harm to the community, rather than to punish the accused. *Id.* at 1332–33. We reject appellants' attempt to distinguish *Edwards* on the basis of the 60-day limit for such pretrial incarceration under § 1322. There our conclusion depended less on the 60-day limit than on application of the test employed in *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963), to determine whether the statute was penal or regulatory. The lack of a 60-day limit in § 1325(a) does not make it penal, because like § 1322, the purpose of § 1325(a) is not to punish a defendant, but to prevent flight and protect the community in cases of charged first-degree murder. The language of the statute manifests this regulatory purpose as it only allows ordered detention where "the judicial officer has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community."

Appellants also claim that § 1325(a) is punitive because it provides no standards for determining dangerousness. However, § 1325(a) incorporates by reference the

---

5. We will not reach the appeal of the probable cause finding because that is not a final decision for purposes of review. 15 WRIGHT AND MILLER, *Federal Practice and Procedure:* Final Judgment § 3918 at 635 (1976); *DiCesare v. Chernenko,* 303 F.2d 423, 424 (4th Cir.1962).

6. Because his arrest occurred after the effective date of the emergency legislation (July 9, 1982), Holmes does not make an *ex post facto* argument.

same factors for determining dangerousness that usually guide judges in setting conditions of release. *See* D.C.Code 1981, § 23–1321(b).

This conclusion that ordered pretrial detention of persons charged with first-degree murder is regulatory is supported by case law and historical practice. In *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Court emphasized that pretrial detention does not automatically constitute punishment. It concluded that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539, 99 S.Ct. at 1874 (footnote and citation omitted). Because pretrial detention under § 1325(a) is reasonably related to the legitimate governmental objective of preventing flight and/or harm to the community, ordered detention of persons charged with first-degree murder does not constitute punishment.

There is no constitutional right to bail. *United States v. Edwards, supra* at 1325–31. Historically, though bail may have been the rule in non-capital cases, for capital offenses such as first-degree murder, it was the exception. In fact, in England, "[a]s early as 1275 (Stat.Westm. 1, 3 Edw. I, ch. 15), a statute took 'away the power of bailing in treason, and in divers instances of felony' (4 Bl.Comm. 298). In that day there were 160 capital crimes and most of the bailable offenses were minor ones."[7]

> Experience at length taught the inadvisability of bail, regardless of sureties, in cases where the defendant was charged with murder or other capital offense. "For then," as Blackstone expressed it, "the public is entitled to demand nothing less than the highest security that can be given, viz., the body of the accused, in order to insure that justice shall be done upon him, if guilty. Such persons, therefore ... have no other sureties but the four walls of the prison." [4 Bl.Comm. *

298.] [*United States v. Schneiderman,* 102 F.Supp. 52, 72 (S.D.Calif.), *rev'd on other grounds sub nom., Stack v. United States,* 193 F.2d 875 (9th Cir.1951).]

The [Eighth Amendment] bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country. Thus in criminal cases bail is not compulsory where the punishment may be death. Indeed, the very language of the Amendment fails to say all arrests must be bailable. [*Carlson v. Landon,* 342 U.S. 524, 545–46, 72 S.Ct. 525, 536–37, 96 L.Ed. 547 (1952), *modified sub nom., Carlisle v. Landon,* 73 S.Ct. 1179, 97 L.Ed. 1642 (1953).]

■ Thus, the legislature could have taken the more severe step of eliminating altogether the right to bail in first-degree murder cases. Therefore, the lesser step of allowing bail in first-degree murder cases, except where conditions of release do not assure against flight or harm to the community, is permissible.

Furthermore, § 1325(a), which requires the judicial officer to consider flight and danger to the community, offers a defendant more protection than prior bail provisions that applied to defendants charged with first-degree murder. Under the Federal Rules of Criminal Procedure that operated from 1946 to 1966, such a defendant "may be admitted to bail by any court or judge authorized by law to do so in the exercise of discretion, giving due weight to the evidence and to the nature and circumstances of the offense."[8] Thus, under that provision, a judge could hold any defendant

---

7. G.F. Longsdorf, "Is Bail a Rich Man's Privilege?", 7 F.R.D. 309, 310 (1947).

8. Former FED.R.CRIM.P. 46(a)(1).

charged with a capital offense without regard to flight or harm to the community. *See, e.g., Ex Parte Monti,* 79 F.Supp. 651 (E.D.N.Y.1948) (defendant charged with treason denied bail under former Fed.R. Crim.P. 46(a)(1)).[9]

Significantly, when Congress amended the Federal Rules of Criminal Procedure in 1966 (by adopting the Bail Reform Act of 1966), it specifically noted that

> This legislation does not deal with the problem of the preventive detention of the accused because of the possibility that his liberty might endanger the public.... Obviously, the problem of preventive detention is closely related to the problem of bail reform. A solution goes beyond the scope of the present proposal .... Consequently, this legislation is limited to bail reform only.[10]

As the criteria in that legislation concerning bail for persons charged with capital offenses is the same as in § 1325(a),—"reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community ...."[11]—it is clear that this language should not be read to preclude ordered detention. The historical precedent for detaining prior to trial those charged with first-degree murder reinforces our conclusion that § 1325(a) is a regulatory provision.

■ Just as historical practice forms the basis for the conclusion that due process requires proof beyond a reasonable doubt in the adjudication of criminal cases, the historical practice of denying bail to defendants charged with first-degree murder demonstrates that these pretrial detention orders do not violate substantive due process of law. *Cf. In re Winship,* 397 U.S. 358,

362–65, 90 S.Ct. 1068, 1071–73, 25 L.Ed.2d 368 (1970).

**B.** *Ex Post Facto and Retroactive Application*

■ The crimes with which appellants de Veau and Wilson are charged occurred before § 1325(a) became effective on July 9, 1982. Thus, they argue that the Statute's application to them violates both the *ex post facto* clause [12] and the principle of statutory construction against retroactive application. But, as we have held herein, the amendment to § 1325(a) does not impose (or increase) punishment. In addition, the amendment does not make formerly legal conduct a crime, or change the elements of murder or the ultimate facts necessary to establish guilt. Therefore, there is no *ex post facto* violation. *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).

■ Appellants' argument that the application of amended § 1325(a) violates the statutory principle against retroactive application is meritless. In order to violate the principle, the amendment would have to deprive appellants of a matured or unconditional right. *See Bradley v. Richmond School Board,* 416 U.S. 696, 720, 94 S.Ct. 2006, 2020, 40 L.Ed.2d 476 (1974). Because, as this court noted in *Edwards,* there is no constitutional right to bail, the amendment does not deprive appellants of any right. Moreover, application of the new bail law can only effect pretrial liberty after its effective date. Therefore, application of the amended statute to appellants does not violate the statutory principle against retroactive application.

---

**9.** Similarly, most state constitutions provide that bail shall be allowed, "except for capital offenses, when the proof is evident or the presumption great." *See, e.g.,* ARK. CON. art. II, § 8; ARIZ. CON. art. II, § 22.

**10.** H.R.REP. No. 1541, 89th Cong., 2d Sess. 2, *reprinted in* 1966 U.S.CODE CONG. & AD.NEWS 2293, 2296.

**11.** *Compare* 18 U.S.C. § 3148 (1976) with D.C. Code 1981, § 23–1325(a), as amended.

**12.** U.S. CONST., art. I, § 10, cl. 1.

C. *Procedural Due Process*

(1) *Nature of the Hearing*

■ Because § 1325(a) lacks § 1322's 60-day limit on pretrial detention, appellants claim they are entitled to greater procedural due process protections than this court found would be required for pretrial detention under § 1322. Specifically, appellants contend that they have a right to: (1) a hearing concerning the basis of the proposed detention; (2) notice reasonably in advance of the hearing setting forth the specific facts on which the government intends to rely to establish dangerousness; (3) confront in person all eyewitnesses upon whom the government would rely; (4) present evidence; (5) compulsory process; and (6) a written decision setting forth findings of fact based on clear and convincing evidence and setting forth with specificity the reasons for the detention.

*Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) sets the minimum procedural process due under the Fourth Amendment for pretrial detention. While the process in *Gerstein* was aimed at a determination of offense probable cause, we see no meaningful difference between that and the decision here on the additional factors of likelihood of flight and danger to the community. In *Gerstein,* the Court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* at 115, 95 S.Ct. at 864. The Court also held that such adversary safeguards as right to counsel, confrontation, cross-examination, and compulsory process were "not essential for the probable cause determination required by the Fourth Amendment," since such procedures would exacerbate problems of pretrial delay. *Id.* at 120–23, 95 S.Ct. at 866–67. Surely, if a process is adequate for Fourth Amendment purposes, there is no reason why it should not be adequate for Fifth Amendment purposes.

In *Edwards,* this court held that while the procedures required by § 1322 (right to a hearing, to representation by counsel, to present evidence, to testify, and to present witnesses) were constitutionally adequate, they were not constitutionally required because "[a]n arrestee has no constitutional rights to cross-examination, confrontation, or compulsory process or to proof beyond a reasonable doubt in a bail proceeding." *United States v. Edwards, supra* at 1336.

In fact, the historic precedent for holding persons accused of first-degree murder without bail supports application of the minimum procedural protections required by the Court in *Gerstein v. Pugh, supra.* This view was expressed in Judge Ferren's concurring and dissenting opinion in *Edwards.* He distinguished pretrial detention without bail in capital cases, for which the *Gerstein* Fourth Amendment analysis would apply, from pretrial detention in noncapital cases for which he felt Fifth Amendment analysis would be more appropriate. *Edwards, supra* at 1353 n. 3. (concurring in part and dissenting in part). Therefore, based on *Edwards,* this court rejects appellants' contention that § 1325(a) violates their rights to confrontation and compulsory process.

The government correctly notes that § 1321(b), which is incorporated by reference in § 1325(a), provides a defendant with sufficient notice of the factors the court will consider in its determination concerning flight and danger to the community. Specifically, that provision mandates consideration of "such matters as the nature and circumstances of the offense charged, the weight of the evidence against such person, his family ties, employment, financial resources, character and mental conditions, past conduct, length of residence in the community, record of convictions, and any record of appearance at court proceedings, flight to avoid prosecution, or failure to appear at court proceedings." D.C. Code 1981, § 23–1321(b).

■ Though § 1325(a), unlike § 1322, does not state that a hearing is required prior to detention without trial, these appellants were given hearings. Because a

§ 1325(a) determination could result in a "significant pretrial restraint of liberty," some type of hearing is required to insure a "fair and reliable determination." *See Gerstein v. Pugh, supra* at 125–26, 95 S.Ct. at 868–69.

Though § 1325(a) does not expressly give a defendant the right to present evidence, counsel were permitted to present extensive argument and any information relevant to the bail determination. D.C.Code 1981, § 23–1321(b). This is consonant with the informal nature of the hearing, which allows counsel to make factual presentations concerning the factors under § 1321(b), without the need for a formal evidentiary hearing. *See Blunt v. United States,* D.C. App., 322 A.2d 579 (1974) (clear and convincing standard of proof under § 23–1322 is met by informal proceedings similar to those found in the instant case). Just as the court in *Gerstein v. Pugh, supra* at 121, found that adversary safeguards were not necessary at a probable cause hearing, this court concludes that there is no constitutional right to a formal evidentiary hearing in a § 1325(a) hearing. The hearing contemplated by the legislature is an informal one in which the presiding judge entertains representations from counsel and the bail agency. This is in accord with § 1321(b), which instructs that "the judicial officer shall, on the basis of *available information*" determine which conditions of release, if any, will reasonably assure against flight and danger. (Emphasis added.) By specifying "available information," the legislature expressed its intent that the hearing would be an informal one in which counsel made representations concerning the "available information."

### (2) *Standard of Proof*

■ There is no constitutional requirement that a decision to detain prior to trial be supported by clear and convincing evidence. In *Edwards, supra* at 1339, this court rejected the contention that proof beyond a reasonable doubt is needed for pretrial detention, noting that probable cause is all that is constitutionally required. For these purposes, we conclude that the "reason to believe" clause of § 1325(a) is the equivalent of a probable cause standard. As that *Edwards* holding is dispositive, this court rejects the contention that the detention must be based on clear and convincing evidence.[13] The statute requires "reason to believe"—the equivalent of probable cause—and that is sufficient.

### (3) *Form of the Decision*

■ Appellants' claim that there must be a written decision with specific findings of fact stating the reasons for detention. Though this is not required by either *Gerstein* or *Edwards,* this court, to facilitate its review, does require a written statement or its equivalent, a transcript of the trial court's reasoned holding. *Villines v. United States,* D.C.App., 312 A.2d 304, 306 (1973). Without a written finding or transcript it is difficult to proceed on the expedited basis contemplated by D.C.Code 1981, § 23–1324(b), and D.C.App.R. 4 III and 9(a). We find the records in these cases sufficient.

### D. *Section 1325(a) Is Neither Void for Vagueness Nor Overbroad*

■ Appellants argue that § 1325(a) is void for vagueness because it provides no standard for a judge to determine whether a person would "pose a danger to . . . the community." We reject this argument.

First, the incorporation of § 1321(b) into § 1325(a) does provide standards to determine whether to release a defendant prior to trial. Second, just as this court concluded in *Edwards, supra* at 1342–43, that there could be no doubt about the meaning of "safety of the community," here we conclude that there can be no doubt about the meaning of the phrase "pose a danger to . . . the community."

---

**13.** Our conclusion is not altered by *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), and *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). These decisions left intact *Gerstein v. Pugh.*

We also reject the overbreadth challenge. Section 1325(a) applies to constitutionally regulable conduct, *i.e.*, detaining an individual who has been found on the basis of a probable cause hearing to have committed first-degree murder, because no combination of conditions will "reasonably assure that the person will not flee or pose a danger to any other person or the community." D.C.Code 1981, § 23–1325(a), as amended. Because § 1325(a) only applies to constitutionally regulable conduct, the overbreadth doctrine has no application. *Edwards, supra* at 1342.

### E. *Section 1325(a) Does Not Deny Equal Protection of the Law*

■ Appellants claim that § 1325(a) deprives individuals charged with first-degree murder of equal protection of the law. Appellants contend that strict scrutiny is required because they have a fundamental right to bail.

Strict scrutiny of the legislative classification is not required because appellants do not have a constitutional right to bail. *Edwards, supra* at 1325–31. The test instead is whether there exists a rational basis for the classification. Section 1325(a) does not deprive appellants of equal protection of the law because the legislature had a rational basis upon which to treat persons charged with first-degree murder differently from persons charged with other crimes. The nature of the offense and its punishment are sufficient for the purpose. We do not consider whether other offenses may be legislatively selected for ordered detention.

### III. APPLICATION OF § 1325(a) TO APPELLANTS

Under D.C.Code 1981, § 23–1325(a), as amended, a person charged with murder in the first degree shall be treated in accordance with § 1321 (released on personal recognizance pending trial, or subjected to other conditions listed in § 1321) "unless the judicial officer has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community."

### A. *de Veau*

■ Appellant de Veau contends that Chief Judge Moultrie abused his discretion by ordering her detained without bond. De Veau contends that she should have been released on her personal recognizance with the condition that she pursue psychiatric care. She states that because she is a lifelong resident of the District of Columbia without a prior criminal record, the court erred by ordering her detained. Furthermore, she contends that the trial court erred by failing to consider the less restrictive conditions of detention under § 1321, when it instead improperly considered conditions under § 1322.

The government responds that the trial judge did not err because the record shows that de Veau poses both a risk of flight and of danger to the community. Because de Veau has been diagnosed as a paranoid schizophrenic, it contends that she poses both a danger to the community and a risk of flight due to her abnormal mental condition. Furthermore, the government observes that she would have a strong motive to flee since she will offer an insanity defense. If she is found guilty, she faces imprisonment, whereas if she is found not guilty by reason of insanity she faces possible indefinite hospitalization. It appears that the trial judge did not err by detaining de Veau without bond pursuant to § 1325(a) [14] because there is record support for the order.

In accordance with § 1321(b), which is incorporated by reference into § 1325(a), Chief Judge Moultrie considered the "available information," including "such matters as the nature and circumstances of the offense charged, the weight of the evidence against such person, his family ties, employment, financial resources, character and mental conditions, past conduct, length of

---

14. We agree that the trial court's oral references to § 1322 were inadvertent.

residence in the community, record of convictions, and any record of appearance at court proceedings, flight to avoid prosecution, or failure to appear at court proceedings." That information showed that de Veau was charged with the first-degree murder of her daughter and that the defendant did not deny committing the offense. Furthermore, de Veau was unemployed, and according to an entry in her diary made a short time before the murder, her daughter's presence was the only thing that kept her from leaving the District of Columbia. Though de Veau had no prior record, and had not missed any court appearances, this did not outweigh the representations about her unstable mental condition. Given this record, it is clear that Chief Judge Moultrie had sufficient "reason to believe" that none of the conditions of release listed in § 1321 would reasonably assure that de Veau would not flee or pose a danger to any other person or to the community. Because the order to detain is "supported by the proceedings below," we affirm the order detaining de Veau pursuant to § 1325(a).

B. *Wilson*

■ At the pretrial detention hearing, the government argued, and Judge Shuker concluded, that Wilson should be detained without bond pending trial because of the risk of danger he presented to the community. The government represented, and Judge Shuker found, that the murder occurred in Wilson's neighborhood after Wilson had a dispute with the victim. Following the argument, Wilson and a codefendant returned to the area. Wilson had a stick and his codefendant had a pistol. When they found the victim, they beat him with a stick, and with their fists and feet. When the victim started to flee, he stumbled and fell. Wilson and his codefendant pursued him, and the codefendant shot the

victim in the head. The government represented, and Judge Shuker found, that the murder was committed in front of witnesses "because of a slight, trivial disagreement." [15] On the basis of these representations and findings, Judge Shuker concluded that Wilson is "dangerous given the evidence that has been presented concerning the factual situation of this particular first-degree murder. And accordingly, they [Wilson and his codefendant] shall be held without bond." [16] In response to defense counsel's contention that the provocation may not have been slight, Judge Shuker stated that his conclusion would be the same because the murder was committed in front of witnesses.

Appellant contends that Judge Shuker's ruling was improper because his community ties show that he would not flee, and the court's finding of potential dangerousness lacks support. The government correctly responds that Wilson's community ties are irrelevant, because Judge Shuker based his ruling solely on the issue of dangerousness. Secondly, even if the record does not support the conclusion that Wilson acted after only slight provocation, Judge Shuker made it clear that he still felt it was necessary to detain Wilson because of the danger he posed to witnesses to the murder.

Wilson also argues that the court failed to find that there were no conditions of release under § 1321 which would protect the community. Contrary to appellant's position, the court did entertain the argument that Wilson should be put in a halfway house. In deciding to detain Wilson, Judge Shuker rejected this alternative. As there is no requirement that a judge explain his consideration of every factor under § 1321 before detaining under § 1325(a), this argument must be rejected.[17]

Because the order to detain Wilson is supported by the proceedings below, that

---

15. Transcript of pretrial hearing, p. 52.

16. *Id.*

17. Wilson also argues that the record does not support Judge Shuker's finding that there were witnesses to the murder. Because this argument was not presented below, it need not be considered in this appeal.

order must be affirmed. D.C.Code 1981, § 23–1324(b).

### C. *Holmes*

■ Appellant Holmes argues that because of his community ties and his record of never missing a court appearance in the course of two prior convictions, the court abused its discretion by detaining him. Contrary to appellant's contention, his detention is supported by the proceedings below and must, therefore, be affirmed.

In Judge Doyle's amended written order, he specifically found that none of the conditions for release in § 1321 could guarantee against Holmes' flight or the danger that he presented to the community. Judge Doyle supported this finding with reference to Holmes' lack of employment, the brutality of the shooting, and the pending charge for possession of a dangerous weapon. These facts are referred to in detail, *supra.* Therefore, the decision to detain Holmes pending trial must be

*Affirmed.*

MACK, Associate Judge, dissenting:

Two members of a motions panel of this court are summarily[1] placing a stamp of constitutional approval on the pretrial detention of persons accused of murder, as a result of a City Council amendment to a Congressional provision which has not been the subject of a prior judicial analysis.[2] This provision, D.C.Code 1981, § 23–1325 (as amended), which ironically bears the title, "Release in capital cases . . . ," is distinct in language and statutory scheme

from the provision, § 23–1322 ("Detention prior to trial"), which this court, en banc, held constitutional in *United States v. Edwards,* D.C.App., 430 A.2d 1321, *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1981). In my view the grant of summary affirmance in the instant cases is not only given in needless haste, but is also ill-advised.

I might put aside, for my purposes here, some of the serious issues raised by the appellants;[3] to me, the majority's treatment of procedural due process alone is deserving of this court's en banc attention.

Moreover, I need not go so far as to embrace all of the due process arguments of appellants in expressing my concern. As I read my colleagues' decision, it reduces itself to a holding that, since there is a governmental interest in protecting the safety of its citizens, the government may detain indefinitely, on criminal charges, presumptively innocent citizens, without meaningful notice, hearings or findings, when a judicial officer believes such citizens are dangerous. I cannot believe that the problem of crime, serious as it may be, has progressed to the point where we should sanction such a drastic shortcut.

Section 23–1325, in its amended form, provides essentially that a person charged with first-degree murder shall be released pursuant to § 23–1321 unless a judge has reason to believe that no one or more of the conditions of release (such as placement under supervised custody, execution of bail or appearance bonds, restrictions on travel, etc.),[4] will reasonably assure against flight

---

1. Although three judges of this court sit to hear motions of significance, the judges assess the issues without the thorough briefing and extended deliberation attendant to regular appeals.

2. Last term, the full court heard en banc a constitutional challenge to a companion section of the Bail Act. *See United States v. Edwards,* D.C.App., 430 A.2d 1321 (en banc), *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1981).

3. Appellants have urged that the declaration of emergency by the Council is based upon considerations having no nexus with respect to the crime of Murder I, that retroactive application of the legislation to them is improper, that their detention denies equal protection, and that the statute is vague and overbroad and punitive in nature.

4. Section 23–1321 provides that the judicial officer, in determining which conditions of release, if any, will assure appearance and safety of the community, shall take into account the nature and circumstances of the offense, the

or danger. Beyond this the provision merely recites, "If such a risk of flight or danger is believed to exist, the person may be ordered detained." No reference is made to a hearing, to procedural processes, to standards of proof, to written findings, or to time limitations for detention—all matters which are the subject of requirements written into § 23–1322, the section construed in *Edwards.* If my two colleagues were suggesting therefore, in relying upon *Edwards,* that the procedural protections of § 1322 are to be read into § 1325 (however inadequate such protections may have been thought to be by the dissenters in *Edwards* ), I would have less cause for concern. What they are in fact saying is something quite different; they are saying that a person accused of first-degree murder (covered literally within the detention provisions of § 1322 and its protections),[5] as a result of the Council's substitution of "first-degree murder" for the "capital offense" release provisions of § 1325, may be detained indefinitely until trial (no matter how long that trial may be in commencing) on the "belief" of a judicial officer as to their dangerous propensities and without any procedural process except that of an informal hearing of "some type" and findings of some kind (which they define quite differently from the requirements of § 1322).

In the interest of making a quick comparison, I might paraphrase the relevant protections afforded a person accused of murder by the statutory provisions at issue in *Edwards.* Section 23–1322(b) provides that no person shall be ordered detained prior to trial unless the judicial officer holds a hearing following specified procedures; finds (1)

by "clear and convincing evidence" that the person has been convicted of a crime of violence within the ten-year period prior to the alleged murder or that the murder was allegedly committed while on bail or other release with respect to another crime of violence (*see* subsection (a)(2)), (2) that there are no conditions of release which will reasonably assure the safety of the community, (3) that, on the basis of information presented by proffer or otherwise, there is a substantial probability that the person committed the offense; and unless the officer issues an order of detention accompanied by written findings of fact and the reasons for its entry. Subsection (c) of § 1322 sets out the specified procedural requirements [6] of a pretrial detention hearing—requirements going to its initiation and its immediacy, and the right of the accused to representation by counsel, to present information by proffer or otherwise, to testify, to present witnesses and to appeal. Subsection (d) provides for expedited trial, a limitation of 60 days on any ordered detention, and for release under changed circumstances.

Compare, if you will, how the majority of the presently constituted motions panel deals with the failure of § 1325 to afford even the *Edwards* protections. It dismisses outright appellants' argument that they may be held in detention indefinitely (potentially for years) [7] noting such detention "does not constitute punishment." *Ante* at 1313. It says, "Though 1325(a), unlike 1322, does not state that a hearing is required prior to detention without trial, these appellants were given hearings." *Ante* at 1315. It concedes that some type of hearing is required but concludes that

---

weight of the evidence, family ties, employment, financial resources, character and mental conditions, past conduct, length of residence in the community, record of convictions and any record of appearance or nonappearance at court proceedings.

5. Murder is defined as a crime of violence within the meanings of § 1322(a)(2). *See* Section 23–1331(4).

6. Two of the judges of this court in *Edwards* thought even these protections constitutionally inadequate to justify a restraint of liberty for 60 days. *Id.* at 1350 *et seq.*

7. The government concedes that this bondless detention is only limited by invocation of speedy trial rights. Those of us who have balanced those rights under the standards of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), are acutely aware of the time periods involved.

there is no right to an evidentiary hearing. Significantly here, at least some of the hearings alluded to consisted of little more than arguments by counsel as to the constitutionality of detention. The specific request to introduce evidence by at least one of the appellants was not honored.

In this regard, the majority states, "Though § 1325(a) does not expressly give a defendant the right to present evidence, counsel were permitted to present extensive argument and any information relevant to the bail determination." *Ante* at 1316. It holds that there is no requirement here (as provided for in § 1322) that the decision to detain be supported by clear and convincing evidence [of past conduct]. The majority equates the "reason to believe" language of 1325 to the "probable cause" [to arrest] standard of *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1974), and holds that probable cause is all that is required.

Following through, the majority holds—and I find this to represent the ultimate in incongruity—that while written decisions with specific findings of fact stating the reasons for detention are not required by *Gerstein* or *Edwards,* "this court, to facilitate its review, does require a written statement or its equivalent." *Ante* at 1316. I suggest that a written statement might be difficult to formulate on the basis of the summary process which the majority is sanctioning.

As rationale for its holding, the majority reasons essentially that there is no Eighth Amendment right to bail, and that traditionally bail was not afforded to persons accused of capital offenses. I concede that *Edwards* stands for the first proposition. However, as to the second, even if I were willing to equate first-degree murder to those offenses formerly punishable by death (for which the risk of flight justified exclusion from Eighth Amendment protection)—an equation which the government concedes has been the subject of divided authority

(*see United States v. Kennedy,* 618 F.2d 557 (9th Cir.1980)),—such concession would not dispose of the issue. Although appellants may not be entitled constitutionally to bail, they are entitled constitutionally to Fifth Amendment procedural safeguards which will insure the fair determination that they are so dangerous or prone to flight as to justify even temporary restraint of liberty prior to conviction. These are the "closely circumscribed" safeguards upon which this court relied in *Edwards* in finding that detention for a maximum of 60 days under § 1322 was regulatory in nature rather than punitive. *Edwards, supra* at 1333–34, 1337. The majority's reliance therefore, upon *Gerstein v. Pugh, supra,* as setting the minimum procedural process due is misplaced. The majority recognizes that *Gerstein* sets a standard for Fourth Amendment purposes but states that there is no reason why such standard should not be adequate for Fifth Amendment purposes. The short reason, of course, is that the Supreme Court was very careful to limit its holding to the precise requirement of the Fourth Amendment. (Significantly *Gerstein* reveals concern with the permissible duration of pre-hearing detentions. *See Fisher v. WMATA,* 690 F.2d 1133 (4th Cir., 1982)).

Moreover, I take issue with the suggestion of my two colleagues that *Edwards* requires no more than the due process protections of *Gerstein.*[8] As I have noted, *Edwards* was upholding the constitutionality of § 1322 provisions which provide for much more in the way of procedural protections than *Gerstein* provides. In rejecting the arguments that those provisions were unconstitutional in not providing for confrontation, cross-examination, compulsory process and the standard of proof beyond a reasonable doubt, *Edwards,* making analogical reference to *Gerstein,* held that the 1322 "statutory procedures satisfy the *minimum* demands of procedural due process

8. For this the majority relies upon certain reasoning by Judge Ferren, dissenting in *Edwards,*

which unfortunately did not carry the day.

before a person may be detained pending trial on the grounds of dangerousness to the community." *Id.* at 1333 (emphasis supplied). If *Edwards* is to be interpreted as requiring no notice, no evidentiary hearing, less than a clear and convincing standard of proof, no written findings and no time limitations as to the length of detention, then it might be advisable that the en banc court take another look at *Edwards*.[9]

In this regard, I have avoided any temptation to reargue *Edwards* which remains, uniquely, the only decision in this country to sanction pretrial detention without bail on the alleged grounds of a compelling governmental interest. *See Hunt v. Roth,* 648 F.2d 1148 (8th Cir.1981), *vac. as moot sub. nom Murphy v. Hunt,* 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982); *Martin v. Strasburg,* 689 F.2d 365 (2d Cir., 1982); *Huihui v. Shimoda,* 644 P.2d 968 (Hawaii 1982). I will not repeat here, therefore, the eloquent plea made by counsel in closing appellants' argument before the motions panel. I will say, however, that the erosion of personal liberty in stage by stage progression is lulling and infinitely difficult to resist.

I respectfully dissent.[10]

---

9. Both appellants and the government have relied upon *Edwards* in advancing their argument as to the penal or regulatory nature of these detentions.

10. While the records before us detail interesting constitutional arguments, I cannot conclude that the hearings afforded, or the findings made, are other than deficient.