**Michael N. KLEINBART, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 90–979.**

District of Columbia Court of Appeals.

Submitted Dec. 16, 1991.
Decided March 6, 1992.

Michael N. Kleinbart, pro se.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and MACK, Senior Judge.

FERREN, Associate Judge:

Appellant is currently detained under a pretrial detention order originally issued on April 5, 1989, pursuant to D.C.Code § 23–1325(a) (1989) ("Release in first degree murder cases or after conviction").[1] After unsuccessfully filing in the trial court both a motion for reconsideration and a motion for review of the order, as well as filing in this court two motions for summary reversal and a petition for rehearing, pro se appellant now directly appeals the detention order. Appellant claims that: (1) § 23–1325(a) is unconstitutionally vague as applied to him; (2) the trial court failed to give the required statutory consideration to conditions of release; and (3) the trial court ordered detention under an incorrect standard. We agree with appellant's third contention. We therefore order vacation of the trial court's pretrial detention order and remand with specific instructions to hold a new pretrial detention hearing immediately.[2]

## I.

On July 1, 1975, appellant was indicted for first degree murder while armed, first degree murder, and carrying a pistol without a license (CPWOL). His first trial in 1976 resulted in a hung jury on the murder charges and in a conviction for CPWOL. This court reversed the CPWOL conviction because appellant's right to a public trial had been violated. *Kleinbart v. United States*, 388 A.2d 878 (D.C.1978) (*Kleinbart I*). When retried, appellant appeared pro se with stand-by counsel, was convicted of first degree murder while armed, and was sentenced to a term of twenty years to life in prison. Appellant claimed on appeal that he had been denied his right to conduct his own defense at trial because the trial judge had preferred to have the stand-by counsel, rather than appellant, attend bench conferences, including those held during voir dire. This court did not reverse on that ground, but we did remand the case for both a *Brady*[3] inquiry and a bifurcated trial on appellant's insanity defense. *Kleinbart v. United States*, 426 A.2d 343 (D.C.1981) (*Kleinbart II*). While those proceedings were still pending, this court decided *Robinson v. United States*, 448 A.2d 853 (D.C.1982), *reh'g denied*, 456 A.2d 848 (1983), holding it was reversible constitutional error for a trial judge to prohibit a pro se criminal defendant from participating in bench conferences during voir dire. In 1989, because of *Robinson*, this court granted appellant's motion to recall the court's mandate in *Kleinbart II*, reversed appellant's conviction, and remanded for a new trial. *Kleinbart v. United States*, 553 A.2d 1236 (D.C.1989) (*Kleinbart III*).

On April 5, 1989, Judge Kessler ordered appellant detained without bond. At a status hearing on August 31, 1989, she denied appellant's motion for pretrial release, and on November 29, 1989, she denied appellant's motion for reconsideration. At a hearing on January 19, 1990, Judge King denied appellant's motion for review of the detention order, relied upon Judge Kessler's findings in making his own, and

---

**1.** For the text and recent amendment of § 23–1325(a), *see infra* p. 868 & note 12.

**2.** The trial court should delay only to afford pro se appellant the necessary time to prepare his case.

**3.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

again ordered appellant held without bond. In March, appellant filed a motion for summary reversal of Judge King's order, and on March 23, 1990, this court issued an order denying appellant's motion: "ORDERED that the motion for summary reversal is denied. It is FURTHER ORDERED AND ADJUDGED that the order of pretrial detention is summarily affirmed." *Kleinbart v. United States,* No. 90–146. On June 22, 1990, we denied appellant's petition for rehearing.

Meanwhile, appellant had filed a second motion to vacate the order with Judge King on April 23, 1990. Judge King denied that motion to vacate on July 13, 1990 and ordered appellant's continued detention. On August 3, 1990, appellant filed with this court his second motion for summary reversal, which the clerk captioned as appeal No. 90–979, and raised additional arguments as to why appellant's detention was unlawful. We denied that motion on March 1, 1991, stating: "On consideration of the motion of appellant for summary reversal [and] the opposition thereto ... it is ... ORDERED that the motion of appellant for summary reversal is denied." *Kleinbart v. United States,* appeal No. 90–979. Unlike our March 23, 1990 order in appeal No. 90–146, our March 1, 1991 order denying summary reversal in this appeal, No. 90–979, was not a summary affirmance. This appeal followed.

## II.

### A.

The government argues that the doctrine of res judicata prevents us from reaching the merits of appellant's claims because appellant's second motion for summary reversal, which we denied on March 1, 1991, contained the same substantive arguments

he raises here. We cannot agree. "While we recognize that res judicata ... may be applied to criminal cases," *Burrell v. United States,* 252 A.2d 897, 900 (D.C.1969); *see Laughlin v. United States,* 120 U.S.App. D.C. 93, 95–96, 344 F.2d 187, 189–190 (1965), the doctrine has only limited applicability in the criminal law context. *Cf.* RESTATEMENT (SECOND) OF JUDGMENTS (1982), at ch. 1 (explaining that law of res judicata derives from common law and law of civil procedure).

■■■ Under the doctrine of res judicata, a prior judgment on the merits precludes relitigation of the same cause of action between the original parties or those in privity with them. *E.g., Goldkind v. Snider Bros., Inc.,* 467 A.2d 468, 473 (D.C. 1983). The government urges us to consider this court's March 1, 1991 denial of appellant's August 3, 1990 (his second) motion for summary reversal as a "final judgment" which this court may not reconsider.[4] According to the RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982), however, "final judgment" is "any prior adjudication of an issue in *another action* that is determined to be sufficiently firm to be afforded conclusive effect." (Emphasis added.) A preclusive effect should not be given to "a judgment which is considered *merely tentative in the very action* in which it was rendered." *Id.* at comment a (emphasis added).[5] According to the appellate record, our March 1, 1991 summary denial of appellant's August 3, 1990 motion for summary reversal was not "another action" but was an earlier motion arising out of the same criminal prosecution, and in this sense, involved this same appeal, No. 90– 979. We conclude, therefore, that the doctrine of res judicata—as a technical matter—does not apply to the procedural facts of this case.[6]

---

4. This was appellant's second motion for summary reversal. In that second motion appellant asked this court to reverse the trial court's denial of appellant's April 23, 1990 (his second) motion to vacate the detention order.

5. Furthermore, "[t]he fact that a trial court order may be reviewable by interlocutory appeal ... does not necessarily mean that the matter resolved in the order should be treated as final

for purposes of res judicata." RESTATEMENT, *supra,* at comment b.

6. In another context in which *res judicata* was not an issue, we held that when a motions division denies a motion to dismiss or various other pretrial motions, "such denials shall be deemed to be without prejudice to reconsideration by a Merits Division" unless expressly denied "with prejudice." *District of Columbia v.*

In criminal law, the issue of finality is generally dealt with under the double jeopardy clause of the Fifth Amendment of the Constitution. Collateral estoppel, a doctrine related to (and often considered part of) res judicata, is one component of the double jeopardy clause. *See United States v. Felder*, 548 A.2d 57, 65 (D.C. 1988). Collateral estoppel " 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *Id.* (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970)). Collateral estoppel, however, generally applies only when a verdict has been reached and either the government attempts to relitigate a factual issue in a second criminal action, *e.g., Felder*, 548 A.2d at 65–67; *United States v. Jackson*, 528 A.2d 1211, 1221–22 (D.C.1987); *Copening v. United States*, 353 A.2d 305, 309 (D.C.1976), or the defendant attempts to relitigate a factual issue in a related civil action, *e.g., Napoleon v. Heard*, 455 A.2d 901, 903 (D.C.1983); *Ross v. Lawson*, 395 A.2d 54, 57 (D.C.1978). *See United States v. Lima*, 424 A.2d 113, 116 (D.C.1980). Because this case deals with a detention order and not with a verdict, and because appellant raises questions of law rather than of fact, we conclude that the preclusion doctrine of collateral estoppel is also not applicable.[7]

We conclude, therefore, that our previous orders denying summary reversal were not "sufficiently firm to be afforded conclusive effect," RESTATEMENT, *supra*, at § 13, and did not constitute "the 'last word' of the rendering court—a 'final' judgment," *id.* at comment a, for purposes of res judicata (claim preclusion) or collateral estoppel (issue preclusion).

**B.**

While sorting through the procedural history of this case and the government's res judicata argument, however, we have discovered another preclusion issue we must resolve before reaching the merits. In arguing for summary reversal in his earlier appeal No. 90–146, appellant specifically urged reversal, among other reasons, on a ground we believe is dispositive of the merits of this appeal if properly reached: the judge failed to apply the clear and convincing evidence standard in ordering pretrial detention based on risk of flight. *See Lynch v. United States*, 557 A.2d 580 (D.C. 1989) (en banc) (requires clear and convincing evidence for pretrial detention under § 23–1325(a) based on dangerousness).[8] The motions division of this court that issued the March 23, 1990 order summarily denying appellant's motion in Case No. 90–146 also summarily affirmed Judge King's detention order. The government, however, had filed no cross-motion for summary affirmance, and the motions division

---

*Trustees of Amherst College*, 499 A.2d 918, 920 (D.C.1985); *see White v. Bd. of Elections and Ethics*, 537 A.2d 1133, 1134 n. 1 (D.C.1988) (same). This analysis essentially deals with law of the case doctrine, making clear that that doctrine, rather than *res judicata*, is the proper tool for analysis when considering sequential rulings in the same action. We deal more fully with the law of the case—which is the applicable doctrine here—in Part II–B, *infra*.

7. Furthermore, the only cases the government cites in support of its position are clearly inapposite to the facts and procedural posture of this case. *See Burrell*, 252 A.2d at 899–900 (appellant claims res judicata effect in D.C. Court of General Sessions of a federal court judge's granting of appellant's motion to suppress in separate case arising out of same circumstances; court concludes doctrines of res judicata and collateral estoppel inapplicable); *Laughlin*, 120

U.S.App.D.C. at 95–98, 344 F.2d at 189–92, (cited in *Burrell*) (appellant claims collateral estoppel effect of evidentiary ruling in prior criminal case; court concludes government precluded from relitigating same evidentiary issues); *Taylor v. England*, 213 A.2d 821, 822–23 (D.C.1965) (court assumes without deciding that res judicata applies to administrative decision but refuses to apply it); *P.P.P. Productions, Inc. v. W & L, Inc.*, 418 A.2d 151, 152 (D.C.1980) (court in civil case applies "law of the case" doctrine barring trial court from reconsidering same question of law presented and decided by another court of coordinate jurisdiction whose decision must be accepted unless reversed or modified by higher court).

8. Appellant also raised the same argument in his April 10, 1990 petition for rehearing, which we denied on June 22, 1990.

gave no reasons why it affirmed. Moreover, of particular significance here, the government's opposition to appellant's motion for summary reversal did not even address appellant's clear and convincing evidence argument premised on *Lynch.* Nonetheless, in affirming the detention order as against appellant's argument that the judge had erred in failing to apply *Lynch,* the motions division implicitly rejected the clear and convincing evidence standard for risk of flight cases under § 23–1325(a).[9] Thus, the question now is whether the motions division's summary affirmance of the pretrial detention order, in addition to its denial of appellant's motion for summary reversal, precludes us from reconsidering in this appeal, No. 90–979, the applicability of a clear-and-convincing evidence standard in risk of flight cases under § 23–1325(a).

In order to answer this question, we have to resolve whether appeals 90–146 and 90–979—both concerning appellant's pretrial detention in his murder prosecution—are, for purposes of preclusion analysis, the same or different cases. If they are the same case, then our concern will be law-of-the-case doctrine. If they are different cases, the focus will be on the applicability of *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971), which requires that "no division of this court will overrule a prior decision of this court"—a result that "can only be accomplished by this court en banc." [10]

■ We conclude the better interpretation is that all pretrial detention orders in the same prosecution are part of the same case for preclusion purposes, without regard to how many appellate court docket numbers may be generated by successive appeals of renewed or amended detention orders. In the first place, the Superior Court considers all motions and rulings applicable to a pretrial detainee to be part of the one case (or consolidated cases) docket-

ed for prosecution. In this instance, for example, the Superior Court has assigned Cr. No. 58442–75 to appellant's prosecution and has used that same number for both pretrial detention rulings to which this court has given different appellate docket numbers, 90–146 and 90–979, respectively. But even more to the point, single trial court docketing reflects the fact that the case fundamentally at issue is the murder prosecution itself and that pretrial rulings—here pretrial detention orders—are but preliminary aspects of that one case.

■ More specifically, pretrial detention orders are "regulatory," not punitive, measures, *United States v. Salerno,* 481 U.S. 739, 747, 107 S.Ct. 2095, 2101, 95 L.Ed.2d 697 (1987), which the District pretrial detention statute recognizes are open to periodic review and modification. *See* D.C.Code § 23–1324 (1989) (incorporated by § 23–1325(d)) (outlining multiple procedures for amendment and review of pretrial detention orders); *see also Clotterbuck v. United States,* 459 A.2d 134 (D.C. 1983) (Superior Court judge authorized to revoke or modify pretrial bail ruling of hearing commissioner). Thus, inherently such orders are preliminary and ancillary to the prosecution; they are not separate cases in their own right. Any preclusion analysis, therefore, properly fits within a law of the case—not an *M.A.P. v. Ryan* — discussion.

■ Under the law of the case doctrine, appellate courts generally adhere to a ruling made on a prior motion or appeal. *See Ass'n of Investment Brokers v. S.E.C.,* 219 U.S.App.D.C. 259, 265 n. 17, 676 F.2d 857, 863 n. 17 (1982). That doctrine, however, is discretionary. It "merely expresses the practice of courts generally to refuse to reopen what has been decided, [and is not] a limit to their power." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct.

---

**9.** The only way one could say the motions division did not rule on the *Lynch* issue would be to say the division assumed the applicability of the clear and convincing evidence standard *arguendo* and found such evidence of record. But appellate courts do not properly engage in fact-finding. Thus, absent trial court findings of

clear and convincing evidence, the motions division could not properly have found that this standard was met.

**10.** In context, *M.A.P.* refers to a "prior decision" in another case, not to a prior ruling in the same case.

739, 740, 56 L.Ed. 1152 (1912), *quoted with approval in Potomac Passengers Ass'n v. Chesapeake & Ohio Ry. Co.,* 171 U.S.App. D.C. 359, 363 n. 22, 520 F.2d 91, 95 n. 22 (1975). As we recently reiterated, this court will not apply the law of the case doctrine if a previous ruling in the case is not " 'sufficiently final' " or is " 'clearly erroneous in light of newly presented facts or a change in substantive law.' " *Williams v. Mount Jezreel Baptist Church,* 589 A.2d 901, 907 (D.C.) (quoting *Weinberg v. Johnson,* 518 A.2d 985, 987 (D.C.1986)), *cert. denied,* —— U.S. ——, 112 S.Ct. 190, 116 L.Ed.2d 151 (1991). The next question, then, is whether there is any justification for this merits division to reconsider the motions division's implicit rejection of the clear and convincing evidence standard under § 23–1325(a) in this risk of flight case.

We have some precedent justifying a merits division's departure from a motion division's ruling in the same case. We have held that when a motions division denies a motion to dismiss or various other pretrial motions, "such denials shall be deemed to be without prejudice to reconsideration by a Merits Division" unless expressly denied "with prejudice." *District of Columbia v. Trustees of Amherst College,* 499 A.2d 918, 920 (D.C.1985); *see White v. Bd. of Elections and Ethics,* 537 A.2d 1133, 1134 n. 1 (D.C.1988) (same); *supra* note 6. We so ruled because of the summary nature of the disposition and the usual practice of deciding the motion without explanation. A denial of a motion to dismiss—or for summary reversal—does not necessarily suggest a view of the merits in the way that a summary affirmance does; almost inherently the denial of such motions would appear to be without prejudice absent a statement to the contrary in the court's order. Thus, the *Amherst College* ruling does not dictate the result here. But we believe that under the circumstances presented, the motions division's summary affirmance in appeal No. 90–146 need not be honored as the law of the case; despite the implicit rejection of *Lynch*'s clear and convincing evidence standard in the motions division's ruling, we do not believe that the issue was thoroughly aired and definitively resolved.

In the first place, the motions division ruling in appeal No. 90–146 went beyond the motions presented by the parties, for the government did not move for summary affirmance. Although this court presumably does have authority to affirm a pretrial detention order *sua sponte* when ruling on a motion for summary reversal, such a ruling is highly unusual and should be reserved for the clearest of situations. For example, this court's denial of appellant's second motion for summary reversal of the detention order reflects the usual situation; the court did not summarily affirm the order, especially when the government did not ask for affirmance. Under the circumstances, therefore, the affirmance of No. 90–146 appears to have been a perplexing add-on.

Furthermore, the standard of proof applicable to pretrial detention, as applied to risk of flight, may have significant constitutional implications—implications providing a gloss, if not a basis, for the holding that justified en banc review in *Lynch.* Such constitutional concerns deserve thoughtful appellate court consideration, not resolution through an implied holding in a summary ruling offering no explanation.

In sum, three concerns cause us, in this instance, not to rely on the law of the case to preclude consideration of the standard of proof required for risk of flight cases under § 23–1325(a): (1) *sua sponte* summary affirmance of the detention order in appeal No. 90–146, absent a government request for such relief (and absent even a government response to appellant's argument on the standard of proof issue in his motion for summary reversal); (2) an implicit appellate ruling on the issue in a summary proceeding without articulation of any supporting reason; and (3) a ruling with significant constitutional implications. For these reasons, we are not precluded as a merits division by the motions division's summary affirmance in appeal No. 90–146 from reviewing the question whether pretrial de-

tention under § 23–1325(a) based on risk of flight must be supported by clear and convincing evidence. We therefore turn to the merits.

### III.

We conclude that we must order vacation of the detention order and remand for an immediate pretrial detention hearing because the trial court did not apply the correct evidentiary standard for pretrial (sometimes called "preventive") detention under D.C.Code § 23–1325(a). In *Lynch v. United States,* 557 A.2d 580, 581 (D.C. 1989) (en banc), we held—"[o]n authority of *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (as distinguished from 'our inherent supervisory power')"—that under § 23–1325(a) the government must justify pretrial detention, based on the danger the defendant poses to others or the community, by clear and convincing evidence. Although *Lynch* did not consider the evidentiary standard under § 23–1325(a) applicable to risk that the defendant would flee before trial—the issue in this case—we believe that the statutory language, coupled with our analysis in *Lynch,* compels a conclusion that the trial court must also apply the clear and convincing evidence standard to risk of flight.[11]

### A.

■ The provision of D.C.Code § 23–1325(a) under which appellant is detained provides:

A person who is charged with murder in the first degree shall be treated in accordance with the provisions of section 23–1321 [applicable to pretrial detention decisions in other than first degree murder cases] unless the judicial officer has *reason to believe* that no one or more conditions of release will reasonably assure that the person will not *flee or pose a danger* to any other person or to the community. If such a *risk of flight or danger* is believed to exist, the person may be ordered detained. (Emphasis added.)[12]

In *De Veau v. United States,* 454 A.2d 1308 (D.C.1982), *cert. denied sub nom. Holmes v. United States,* 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983), *overruled by Lynch, supra,* 557 A.2d 580, which concerned pretrial detention based on findings of both "risk of flight" and "danger," we held that the " 'reason to believe' clause of § 23–1325(a) is the equivalent of a probable cause standard." *Id.* at 1316 (citing *United States v. Edwards,* 430 A.2d 1321, 1339 (D.C.) (en banc), *cert. denied,* 449 U.S. 872, 101 S.Ct. 211, 66 L.Ed.2d 92 (1981)). We therefore premised our analysis on an understanding that both statutory criteria, "risk of flight" and "danger," are governed by the same standard of proof—"reason to believe"—defined to mean "probable cause."

In *Lynch,* however, we imposed a higher standard. We held that the "trial court, in making a finding of dangerousness under D.C.Code § 23–1325(a), must employ the

---

**11.** Appellant raises this claim in the section of his brief entitled: "The Trial Court Ordered Detention Under An Incorrect Standard." Although this pro se appellant did not specifically bring the clear and convincing evidence standard to the court's attention in his current brief, he did in effect ask us to determine the correct standard for pretrial detention orders based on risk of flight. Moreover, in arguing for summary reversal in his earlier appeal No. 90–146, appellant—then represented by counsel—pressed the clear and convincing evidence standard. *See supra* Part II.B.

**12.** In its present form, the last sentence of § 23–1325(a), added by D.C.Law 8–120, § 2(b) (May 8, 1990), provides:

[I]f the judicial officer finds that there is a substantial probability that the person has

committed murder in the first degree while armed with or having readily available a pistol, firearm, or imitation firearm, there shall be a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the safety of any other person or the community.

D.C.Code § 23–1325(a) (1989 & 1991 Suppl.). Because the Council of the District of Columbia added this provision after the two pretrial detention hearings in this case, and because the trial court was only concerned with the risk appellant would flee and not with the danger he posed to others or the community, we do not now construe the standards and burdens under the new provision.

standard of clear and convincing evidence; *De Veau, supra,* is overruled to the extent that it contradicts this requirement." *Lynch,* 557 A.2d at 581–82 (footnote omitted).[13]

The question in this case, then, is whether *De Veau* and *Lynch* permit the trial court to find "reason to believe" there is a risk of flight warranting pretrial detention by *less* than clear and convincing evidence. We note, first, that by expressly relying on *Salerno* rather than on our inherent supervisory power over the administration of criminal justice, we implicitly constitutionalized our ruling in *Lynch.* That is to say, in the absence of a standard of proof in the statute itself (or in its legislative history), we concluded that clear and convincing evidence was required to justify pretrial detention, based on danger, in order to be sure the statute was constitutionally applied. To ascertain whether *Lynch* also should be understood to overrule the other half of *De Veau* by requiring clear and convincing evidence for risk of flight under § 23–1325(a), we must take a closer look at the meaning of our reliance on *Salerno.*

The federal statute at issue in *Salerno,* the Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (1985 & Supp. III), expressly provides that a finding of danger to others or the community justifying preventive detention shall be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). The federal act, however, is silent on the standard required to support a finding of risk of flight. Because the focus in *Salerno* was on danger, the Court did not consider whether the federal Bail Reform Act could survive constitutional attack if only a preponderance of the evidence was required to justify pretrial detention based on risk of flight.[14] But in holding that the federal act satisfied constitutional due process requirements for detention based on danger, the Court stressed the importance of the clear and convincing evidence standard in holding constitutional the procedural protections afforded detainees under 18 U.S.C. § 3142(f). *See Salerno,* 481 U.S. at 750–51, 107 S.Ct. at 2103–04.[15]

The Supreme Court did not expressly hold in *Salerno* that the clear and convincing evidentiary standard itself was constitutionally mandated given the Act's other procedural safeguards. But the Court came so close to announcing such a requirement that this court in *Lynch,* sitting en banc, found in (or engrafted on) our local statute, § 23–1325(a), the clear and convincing evidence requirement as a con-

---

**13.** Absent such clear and convincing evidence, the statute requires the trial court to apply D.C.Code § 23–1321 and treat a first degree murder defendant as if he or she had been charged with a lesser crime.

**14.** Before *Salerno,* the United States Court of Appeals for the District of Columbia Circuit, for example, applied a preponderance of the evidence standard by relying on the Bail Reform Act's silence on the evidentiary standard applicable to risk of flight, as well as on the simple reasoning that the preponderance standard is the one used for "other kinds of pretrial proceedings." *United States v. Vortis,* 251 U.S.App. D.C. 329, 330–31, 785 F.2d 327, 328–29, *cert. denied,* 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986); *see also United States v. Himler,* 797 F.2d 156, 161 (3d Cir.1986) (listing federal circuits which before *Salerno* decided that government's burden in demonstrating risk of flight is preponderance of the evidence). After *Salerno,* the D.C.Circuit Court has continued to apply the preponderance standard in pretrial detention cases based on risk of flight. These decisions, however, continue to rely on pre-*Salerno* cases based solely on statutory interpretation and pre-

vious court practice, not on constitutional analysis and interpretation. *See, e.g., United States v. Peralta,* 270 U.S.App.D.C. 294, 849 F.2d 625 (1988); *United States v. Simpkins,* 264 U.S.App.D.C. 22, 826 F.2d 94 (1987). It appears that the federal courts have not examined the appropriate constitutional standard for ordering pretrial detention based on risk of flight in light of the Supreme Court's analysis in *Salerno.* Thus, we find none of the above cases persuasive.

**15.** The Court said in *Salerno,* 481 U.S. at 750–51, 107 S.Ct. at 2103–04:

[T]he Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person....

\*   \*   \*   \*   \*   \*

... When the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat ..., we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat.

stitutional precaution, if not prerequisite. Whatever our precise intention, we held in *Lynch* that the trial court must rely on clear and convincing evidence that a defendant poses a danger to warrant preventive detention.

Like the Supreme Court in *Salerno*, we did not rule in *Lynch* on the evidentiary standard for detention based on risk of flight. But for two reasons—one constitutional, the other statutory—we believe that *Lynch* leaves no room for a lesser standard of proof for pretrial detention in such a case. We look, first, at the constitutional requirements. Although the federal Bail Reform Act could be construed—purely as a matter of statutory construction—to require only a preponderance standard in risk of flight cases, *see supra* note 14, we believe that *Salerno*'s emphasis on the clear and convincing evidence standard to sustain the constitutionality of that statute as applied to danger necessarily carries over, as a requirement of due process, to risk of flight cases. A defendant's liberty interest is no less—and thus requires no less protection—when the risk of his or her flight, rather than danger, is the basis for justifying detention without right to bail. *See also infra* note 18 (due process implications of prolonged pretrial detention). It follows that *Lynch*, in relying on *Salerno* (rather than on this court's inherent supervisory power), necessarily implies, in the way *Salerno* does, that in order to satisfy due process, risk of flight cases must be governed by the same clear and convincing evidence standard that governs rulings on danger. *Cf. United States v. Estela Melendez*, 700 F.Supp. 82, 84 (D.P.R.1988) (finding that government "presented clear and convincing evidence that defendant poses a special flight risk"). This is especially true because under § 23–1325(a) there are fewer procedural safeguards than there are under the federal Bail Re-

form Act, aside from the applicable standard of proof.[16]

By overruling *De Veau* as to the evidentiary standard for detention based on danger (the only issue presented in *Lynch*) we did not implicitly reaffirm *De Veau*'s probable cause standard as to risk of flight. To the contrary, because the *De Veau* court perceived the standard of proof applicable to danger and flight to be the same, we cannot say that *Lynch*, in the absence of any reasoning, implicitly severed flight cases and left them under the court's ruling in *De Veau*. The stronger implication is that *Lynch* overruled *De Veau* entirely. *See Lynch*, 557 A.2d at 585 (Ferren, J., concurring in part and dissenting in part) ("*De Veau* has meant that anyone accused of first-degree murder can be lawfully arrested and detained without right to bail based merely on probable cause to believe that otherwise the accused is likely to flee or poses an unacceptable danger to others.... The majority [now] overrules *De Veau's* reliance on probable cause for § 23–1325(a) cases.").

■ In any event, even if one could argue that *Lynch* limited its rejection of *De Veau* to the evidentiary standard applicable to findings of danger—and thus that *De Veau*'s evidentiary standards for danger and risk of flight were severable—the *Salerno* constitutional analysis we adopted in *Lynch* supercedes *De Veau*'s "probable cause" standard for findings based on risk of flight. When intervening constitutional rulings necessitate a change in prior law, a division of this court is empowered to recognize that earlier decisions no longer have force. *See Frendak v. United States*, 408 A.2d 364, 379 n. 27 (D.C.1979) ("We do not believe ... that *M.A.P. v. Ryan*, [285 A.2d 310 (D.C.1971)], obliges us to follow, inflexibly, a ruling whose philosophical basis has been substantially undermined by subsequent Supreme Court decisions."); *Ap-*

---

**16.** For example, under our local statute the defendant is not afforded the right to confront and cross-examine government witnesses at the pretrial detention hearing. *Compare United States v. Edwards*, 430 A.2d 1321, 1337–38 (D.C.1981) (en banc), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982) (defendant not enti-

tled to confront and cross-examine government witnesses under D.C. pretrial detention statute) *with* Bail Reform Act of 1984, 18 U.S.C. § 3142(f) (defendants shall be afforded an opportunity to present witnesses and to cross-examine government witnesses).

*peal of H.R.,* 581 A.2d 1141, 1177 (D.C. 1990) (Ferren, J.) (D.C. adoption statute must be interpreted in line with intervening Supreme Court decisions on constitutional standard for terminating parental rights based on clear and convincing evidence, despite contrary previous decisions of this court).

But even if, after *Salerno,* a legislature or court could constitutionally justify different evidentiary standards for detention based on flight and danger, respectively, *De Veau* makes clear why there is a second, purely statutory reason why *Lynch* effectively requires clear and convincing evidence in risk of flight cases. We have noted *De Veau*'s premise that the standard of proof inherent in the "reason to believe" clause of § 23–1325(a) is the same for danger and flight. This premise is dictated by the fact that § 23–1325(a) does not differentiate between these two detention criteria in any way. Thus, even if *Lynch* addressed only danger, there is no basis for saying, as a matter of statutory interpretation, that the Council intended to apply different evidentiary standards to risk of flight and danger, respectively. Having incorporated a clear and convincing evidence standard into a statute that clearly equates the two detention criteria under § 23–1325(a)—"flee or pose a danger" and "risk of flight or danger"—we conclude that the Council, in its use of language, left no room for two evidentiary standards. Once we ruled in *Lynch* on the standard applicable to danger, that ruling—because of the statutory language—necessarily embraced risk of flight as well.

### B.

At appellant's pretrial detention hearing on August 31, 1989, Judge Kessler stated: "[I]n weighing all [the government's and appellant's evidence] it seems to me that there is still a substantial risk of flight." She concluded: "I cannot find that there is no risk of flight in this case, or that there's any condition or set of conditions that

would predict against flight...." In appellant's January 19, 1990 hearing to review the detention order, after hearing the arguments from both appellant and the government, Judge King stated: "I am satisfied that [D.C.Code § 23–] 1325 [ (a) ] applies and I'm going to hold Mr. Kleinbart without bond...." When asked by appellant's counsel on what the basis was for his conclusion, Judge King replied:

Dangerousness is not a factor at all. He's got a long record so that if convicted, he's almost certain to do some more time and we know that that's at least five more years. That is a major incentive for flight.

He's got a long history of drug usage and there is absolutely nothing that persuades me that he won't immediately when the door opens he'll go back out on the street and he'll go right back to using drugs.

■ Neither Judge Kessler nor Judge King explained how the government had shown by clear and convincing evidence, *see Lynch,* 557 A.2d at 581–82, "that no one or more conditions of release will reasonably assure that [appellant] will not flee." D.C.Code § 23–1325(a).[17] Neither judge clearly stated the evidence on which he or she relied or how that evidence related to the decision. For example, neither judge stated how the concern about appellant's history of drug abuse—in conjunction with the other factors considered, such as the weight of the government's evidence—logically related to the detention decision. A court order denying bail or other conditions of release must do more than repeat statutory language and hypothetical risks; it must clearly state the reasons and rationale for holding in jail—based on regulatory, not punitive concerns—a person who is innocent until proved guilty. *See United States v. Thompson,* 147 U.S.App. D.C. 1, 4 n. 7, 452 F.2d 1333, 1336 n. 7 (1971), *cert. denied,* 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972); *see also Coffin v. United States,* 156 U.S. 432, 453, 15

---

**17.** We recognize that both Judge Kessler and Judge King must have proceeded on the assumption that *De Veau* still required them to apply the probable cause standard, although neither clearly stated what standard they were using.

S.Ct. 394, 403, 39 L.Ed. 481 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.").

▮▮▮▮ Furthermore, in applying the clear and convincing evidence standard, the trial court must carefully consider appellant's rebuttal evidence that he is not a flight risk and that there are in fact conditions of release which could ensure his future appearance in court. The record indicates that appellant submitted several signed letters and affidavits tending to rebut the government's argument that he is a flight risk: a letter from a treating prison psychiatrist stating his expert opinion that appellant is no longer suffering from drug addiction, the condition which had previously rendered him unstable; a letter from a prospective employer; and an affidavit stating specifically where appellant would live in the District. It also appears that a third party had agreed to act as custodian should the court conditionally release him. We note further that the trial court understood that even if appellant were to be tried and convicted of second degree murder, he would be immediately eligible for parole because of the time he has already served, and that if convicted of first degree murder appellant would be parole eligible as early as 1995. On remand the trial court should address each of these counter-

balancing factors supporting an inference that appellant is not inclined to flee and that there may be conditions of release which could guarantee his appearance. *See Truong Dinh Hung v. United States*, 439 U.S. 1326, 99 S.Ct. 16, 58 L.Ed.2d 33 (1978) (Brennan, J., Circuit Justice) (evidence suggesting some risk of flight insufficient to order detention when other evidence supports inference detainee not inclined to flight); *Harris v. United States*, 404 U.S. 1232, 92 S.Ct. 10, 30 L.Ed.2d 25 (1971) (Douglas, J., Circuit Justice) (denial of bail not justified given detainee's showing of strong ties to community); *Simpkins*, 826 F.2d at 97 (detention decision based on risk of flight unsupported by evidence because magistrate failed to address counterbalancing factors); D.C.Code § 23–1325(a) (judicial officer must have "reason to believe that no one or more conditions will reasonably assure that the person will not flee").[18]

## IV.

▮▮▮▮ Because the trial court did not apply the clear and convincing evidence standard under § 23–1325(a) for detaining a murder suspect before trial, we must reverse. We order the trial court to vacate its detention order, and we remand the case for an immediate pretrial detention hearing so the trial court can consider all relevant factors.[19] We do so with a sense of urgen-

18. In considering continued pretrial detention or release, the trial court should weigh the due process implications of the length of time appellant has already been detained. Prolonged detention without bail or trial may violate due process. The Supreme Court has said that even though "pretrial detention may serve legitimate regulatory purposes, it is still necessary to determine whether the terms and conditions of confinement ... are in fact compatible with those purposes [and the due process clause]." *Schall v. Martin*, 467 U.S. 253, 269, 104 S.Ct. 2403, 2412, 81 L.Ed.2d 207 (1984).

For example, in deciding whether the length of detention before trial violates due process, the Second Circuit has considered how long the detainee has already been imprisoned, how long the detainee can expect to remain detained awaiting trial, the extent to which the government bears responsibility for the delay in starting trial, and the facts both supporting and denying the risk of flight. *See United States v.*

*Ojeda Rios*, 846 F.2d 167, 169 (2d Cir.1988); *United States v. Gonzales Claudio*, 806 F.2d 334, 340 (2d Cir.1986). In a case where the appellant had been detained 32 months, trial was still several months away, and appellant had acknowledged his willingness to abide by any conditions imposed on his release, the court concluded that due process could not tolerate any further pretrial detention. *Ojeda Rios*, 846 F.2d at 169. In another case where the defendant would have been imprisoned without trial for nine and one-half months, the trial court weighed the defendant's liberty interests against society's interest in his continued detention and held that further detention would violate due process of law. *United States v. Lofranco*, 620 F.Supp. 1324, 1326 (N.D.N.Y.1985).

19. Because we remand in order for the trial court to apply the correct standard under § 23–1325(a), we do not consider appellant's other claims that the statute is vague as applied to him

cy. Appellant has now been held for sixteen years and eight months (since his initial indictment) and has never been subject to a constitutional conviction. It is unclear to us why appellant has not received a new trial since this court reversed his conviction over three years ago. *See Kleinbart III, supra.* A pretrial detainee's appeal or motion regarding his or her detention should not hold up the criminal justice process and the government's obligation to move forward with its criminal charge. The pretrial detention statute—even for those suspected of armed murder—may not be used either as a punitive measure or to incarcerate in lieu of a valid conviction based on verdict and sentence.

*So ordered.*

and that the trial court failed to give the statutorily required consideration to conditions of re-

lease before detaining him.