Tracey McPHERSON, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CO–115.

District of Columbia Court of Appeals.

Argued March 19, 1997.
Decided April 10, 1997.

---

with intent to kill while armed. She allegedly attempted to kill her two-year-old son in a hospital bathroom by placing a plastic bag over his head. The trial court denied her motion for release from pretrial detention. Ms. McPherson filed a timely appeal and moved for summary reversal, raising statutory issues relating to D.C.Code §§ 23–1325(a) and 23–1322 (1996 Repl.), and constitutional issues concerning due process and equal protection. The government moved for summary affirmance. We affirm.

## FACTUAL SUMMARY

On May 14, 1996, a two-year-old child, T.M., was admitted to D.C. General Hospital, suffering from seizures. According to the affidavit of a police detective, on May 17, 1996, a nurse at the hospital heard a child crying in an unusual manner, went to the child's room, pushed open the door of the bathroom, and allegedly saw Ms. McPherson "sitting on the toilet, not using the toilet, but holding [the child] close to her chest with a plastic bag covering the child's head down to his neck.... She held the plastic bag over the child's head with one hand covering his face at the same time. The child's feet were kicking while the bag covered his head." Ms. McPherson allegedly removed the bag "suddenly" when she saw the nurse. She told the nurse that "she had sent the child to the bathroom to use the toilet and that the child had put the bag over his own head."

Ms. McPherson was arrested on June 4, 1996, on a warrant charging her with assault with intent to kill while armed. She was held without bond and a preventive detention hearing took place on June 14, 1996. After hearing testimony, the trial court made a probable cause finding, and stated, *inter alia,*

> Based upon the evidence that shows that she did, in fact, try to kill her own child, I would have to conclude that the Government has shown by clear and convincing evidence based upon the circumstances that were presented in this case, the overwhelming evidence indicated an attempt to smother this child and that she does, in fact, pose a danger to the community. Therefore, I would have to detain her with-

David Reiser, Public Defender Service, with whom James Klein and Julia Leighton, Public Defender Service, were on the motion, for appellant.

Catherine F. Sheehan, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher and Ryan H. Rainey, Assistant United States Attorneys, were on the motion, for appellee.

Before STEADMAN and REID, Associate Judges, and GALLAGHER, Senior Judge.

REID, Associate Judge.

Appellant Tracey McPherson is being held in pretrial detention pending trial for assault

out bond pending the trial or other disposition of this case. I also would conclude that there is the existence of a prior Bail Reform Act violation.... [S]he failed to appear at a prior Court proceeding. She is facing a life sentence based upon the charge that is before the Court.... I would therefore conclude that there is an incentive for her not to appear. She has exhibited her willingness not to appear based upon the conviction for the Bail Reform Act violation. So, I also would conclude by clear and convincing evidence that I cannot impose adequate conditions that would adequately ensure that she would appear at future Court proceedings.

In short, the trial court determined that Ms. McPherson not only poses a danger to the community, but also that there is a risk of flight. She was detained under D.C.Code § 23–1325(a), which provides in pertinent part,

A person who is charged with murder in the first degree or assault with intent to kill while armed shall be treated in accordance with the provisions of section 23–1321 unless the judicial officer has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, the person may be ordered detained.

On July 18, 1996, the trial court set trial for September 19, 1996, but on September 13, 1996, granted the government's motion for a continuance. On October 17, 1996, Ms. McPherson filed a motion for release from pretrial detention, which the government opposed. The trial court denied the motion on January 23, 1997. Ms. McPherson filed a timely appeal, and moved for summary reversal. The government moved for summary affirmance. Trial has now been set for early May 1997.

## ANALYSIS

Ms. McPherson raises statutory and constitutional issues on appeal. She contends that (1) the trial court erred in failing to read into D.C.Code § 23–1325(a) the time limits on pretrial detention set forth in § 23–1322; and (2) her detention beyond the time limits imposed in § 23–1322 violates her rights under (a) the due process clause and (b) the equal protection clause of the Constitution of the United States.[1]

### I.

We turn first to the statutory issue. The trial court relied on *De Veau v. United States,* 454 A.2d 1308 (D.C.1982), *cert. denied,* 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983), in concluding that "the time limits of § 1322 need not and are not incorporated into § 1325(a)" and that "there is no reason to ignore the plain language of § 1321 exempting § 1325(a) from its provisions and from the provisions of § 1322 with its 90/100 day time limits." Ms. McPherson contends that the Council of the District of Columbia did not intend to authorize indefinite detention for the crime of assault with intent to kill while armed, and this court should construe § 23–1325(a) so as to avoid constitutional questions. The government argues that we should interpret § 23–1325(a) according to its plain meaning, and that the Council did not intend to apply the time limits set forth in § 23–1322 to § 23–1325(a).

■ "In interpreting a statute, we are mindful of the maxim that we must look first to its language; if the words are clear and unambiguous, we must give effect to its plain meaning." *James Parreco & Son v. Rental Hous. Comm'n,* 567 A.2d 43, 45 (D.C.1989) (citing *Office of People's Counsel v. Public Serv. Comm'n,* 477 A.2d 1079, 1083 (D.C. 1984)). The words of § 23–1325(a) are plain and unambiguous. There is no time limitation in this section. The statute merely

1. Ms. McPherson challenges the constitutionality of § 23–1325(a) on its face, and makes no argument that the statute as applied to her is unconstitutional. Hence, we do not consider this issue. With respect to her challenge to the facial validity of § 23–1325(a), it should be noted that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987).

states in relevant part, "[i]f such a risk of flight or danger is believed to exist, the person may be ordered detained." Moreover, nothing in § 23–1321 or § 23–1322 suggests that the time limitations in § 23–1322(h) apply to § 23–1325(a). Section 23–1321(a) specifically excludes § 23–1325 from its reach, as follows:

> Upon the appearance before a judicial officer of a person charged with an offense, *other than murder in the first degree or assault with intent to kill while armed, which shall be treated in accordance with the provisions of § 23–1325,* the judicial officer shall issue an order that, pending trial, the person be: ... (4)[d]etained under § 23–1322(b).

(Emphasis added). Furthermore, § 23–1322(h), which contains time limits, does not mention or reference § 23–1325(a):

> The case of the person detained pursuant to subsection (b) of this section shall be placed on an expedited calendar and, consistent with the sound administration of justice, the person shall be indicted before the expiration of 90 days, and shall have trial of the case commence before the expiration of 100 days. However, the person may be detained for an additional period not to exceed 20 days from the date of the expiration of the 100–day period on the basis of a petition submitted by the attorney for the government and approved by the judicial officer. The additional period of detention may be granted only on the basis of good cause shown and shall be granted only for the additional time required to prepare for the expedited trial of the person. For the purposes of determining the maximum period of detention under this section, the period shall not exceed 120 days.

Ms. McPherson urges us to examine the legislative history of the 1992 amendments to the Bail Reform Act which, *inter alia,* added "assault with intent to kill while armed" to § 23–1325(a). However, "courts are bound to give effect to the literal meaning [of a

statute] without consulting other indicia of intent or meaning when the meaning of the statutory text itself is 'plain' or 'clear and unambiguous.'" 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 46.04, at 98 (5th ed.1992). Even if we were to consult the legislative history in this matter, there is nothing that we think suggests that the Council of the District of Columbia intended to incorporate the time limits of § 23–1322 into § 23–1325(a).

The report of the Council's Judiciary Committee on the 1992 Bail Reform Act amendments described the purpose of adding "assault with intent to kill while armed" to § 23–1325: "This section adds 'assault with intent to kill while armed' to D.C.Code § 23–1325 so that this offense can be treated the same as first degree murder for purposes of determining whether or not pretrial release should be granted." Council of the District of Columbia, Report of the Committee on the Judiciary, Bill 9–360, the "Bail Reform Amendment Act of 1991," January 23, 1992, at 7. In reporting on the proposed amendments, Wilhelmina J. Rolark, Esq., then Chairperson of the Committee on the Judiciary, stated in part,

> [T]he amendment includes assault with intent to kill while armed as an offense in addition to murder one, [for] which the court may automatically hold a defendant without a pretrial detention hearing.
>
> This amendment would thus cover those drive-by shootings which have become particularly prevalent and are very infamous in the District of Columbia.

Council of the District of Columbia, Sixteenth Legislative Meeting, February 4, 1992, at 78. In her presentation of the 1992 proposed amendments, Councilmember Rolark gave not even a hint that the time limits set forth in § 23–1322(h) were intended to be incorporated into § 23–1325(a). We decline to speculate, as does Ms. McPherson, as to whether the Council intended for the § 23–1322(h) time limits to apply to § 23–1325(a).[2] Even

---

**2.** Ms. McPherson maintains that, "[t]he Council opted to impose time limitations longer than under the prior statute, but substantially shorter than those proposed by [the] United States Attorney.... The Council's determination that deten-

tion should not extend longer than 120 days for assault with intent to murder while armed or second-degree murder while armed makes it improbable (because wholly irrational) that the Council believed detention for [assault with in-

if the legislative history were relevant, there is nothing in that history which supports Ms. McPherson's contention. Accordingly, we agree with the trial court's judgment regarding § 23–1325(a).

## II.

Second, Ms. McPherson challenges the facial validity of § 23–1325(a) both on due process and equal protection grounds. The trial court rejected both challenges. With regard to the due process issue, the trial court concluded that, "the lack of a specified time limit" in § 23–1325(a) was not "inconsistent with due process principles," and that other statutory provisions or rules protected Ms. McPherson from punitive detention, including "Super. Ct.Crim. R. 48(b), providing for dismissal by the court of cases where there has been 'unnecessary delay in bringing a defendant to trial,'" and "D.C.Code § 23–102 and Super. Ct.Crim. R. 48, which provide that defendants must be released from detention if an indictment has not been returned within nine months."

■ On appeal, Ms. McPherson asserts that the due process clause of the Fifth Amendment to the Constitution "forbids governments from depriving individuals of liberty before trial without stringent time limitations to assure that detention is used strictly for the regulatory purpose of preserving the status quo before trial, and not as a substitute to trial and conviction." We know of no case that recognizes a constitutional right to liberty before trial after the passage of a particular time period. In support of her assertion, Ms. McPherson cites, *inter alia, Foucha v. Louisiana,* 504 U.S. 71, 82–83, 112 S.Ct. 1780, 1786–87, 118 L.Ed.2d 437 (1992), and *Salerno, supra,* 481 U.S. at 747, 107 S.Ct. at 2101–02.

In *Foucha,* the Supreme Court acknowledged that, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." 504 U.S. at 83, 112 S.Ct. at 1787 (quoting *Salerno, supra,* 481 U.S. at 755, 107 S.Ct. at 2105–06). However, the Supreme Court also recognized a "liberty interest under the Consti-

tution in being freed from indefinite confinement in a mental facility." 504 U.S. at 82, 112 S.Ct. at 1786. Ms. McPherson is not being confined indefinitely in a mental facility, nor indefinitely in jail. Rather, she is being confined only pretrial, or until the outcome of her trial. Under *Salerno,* her pretrial confinement is constitutionally permissible under the due process clause so long as it is regulatory, not punitive. 481 U.S. at 746–47, 107 S.Ct. at 2101–02. Detention is "a legitimate regulatory goal" when it "[prevents] danger to the community." *Id.* at 747, 107 S.Ct. at 2101. However, "[w]hile the Government's general interest in preventing crime is compelling," it must "[prove] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual in the community." *Id.* at 751, 107 S.Ct. at 2103; *see also Lynch v. United States,* 557 A.2d 580, 581 (D.C. 1989) (en banc), and *Kleinbart v. United States,* 604 A.2d 861, 868 (D.C.1992) (risk of flight requires proof by clear and convincing evidence). Where the government sustains its burden of proof, "consistent with the Due Process Clause, a court may disable the arrestee from executing that threat...." 481 U.S. at 751, 107 S.Ct. at 2103. Hence, "[the court] cannot categorically state that pretrial detention 'offends some principle of justice so rooted in the tradition and conscience of our people as to be ranked as fundamental.'" *Id.* (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). Here, the trial court found by clear and convincing evidence that Ms. McPherson poses a danger to the community, and presents a risk of flight. Under these circumstances, the due process clause is not a barrier to her pretrial detention under § 23–1325(a). As the Supreme Court said in *Salerno,* "[g]iven the legitimate and compelling regulatory purpose of the [Bail Reform] Act and the procedural protections it offers, we conclude that the Act is not facially invalid under the Due Process Clause of the Fifth Amendment." *Id.* at 752, 107 S.Ct. at 2104.

Ms. McPherson also argues that the legislative classification establishing a distinction

---

tent to kill while armed] should last longer." This is mere conjecture, not legislative history on

which any ambiguity in statutory language, if such ambiguity existed, could be resolved.

between assault with intent to kill while armed, which is governed by § 23–1325(a), and assault with intent to murder while armed and other serious crimes, which are controlled by § 23–1322, violates the equal protection clause.[3] She asserts that our analysis of this equal protection issue is governed by a strict scrutiny standard rather than either a heightened scrutiny or a rational basis standard, because pretrial liberty is a fundamental right. The government contends that the applicable standard is rational basis, not strict or heightened scrutiny. Without resolving the applicable standard of review issue, the trial court "[found] meritless the defense argument that equal protection principles were violated by including [assault with intent to kill while armed] in § 1325, when [assault with intent to murder while armed] and murder II were not included." The trial court emphasized the government's "compelling need to protect the community against dangerous offenders who have committed the offense of [assault with intent to kill while armed]."

Generally, in cases involving a suspect classification, that is race or national origin, the Supreme Court examines the statute under a strict scrutiny standard, and determines whether the government can justify the legislative classification because of a compelling governmental interest. *See Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Bolling, supra; Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). Here, Ms. McPherson does not maintain that she falls within either of these suspect classifications, race or national origin. Rather, she asserts that she has a fundamental liberty interest, and that examination of that interest requires a strict scrutiny analysis. While *Salerno* acknowledges at least a limited liberty interest with respect to freedom from pretrial detention, we do not need to determine whether this type of limited interest requires a strict scrutiny analysis, or whether our decision in *De Veau, supra,* which rejected any notion of a fundamental right to bail, controls the outcome of this issue.

The Council of the District of Columbia articulated a compelling governmental interest, and a legitimate and substantial interest, and a rational basis for adding assault with intent to kill while armed to murder one in § 23–1325(a). The Council wanted to ensure that "drive-by shootings which have become particularly prevalent and are very infamous in the District of Columbia" are covered under § 23–1325(a), as is murder one. Hence, since we are presented only with a facial challenge to § 23–1325(a), we cannot say that "no set of circumstances exists under which [§ 23–1325(a)] would be valid." *Salerno, supra,* 481 U.S. at 745, 107 S.Ct. at 2100. Certainly a government has a compelling interest, a legitimate and substantial interest, and a rational basis for detaining those accused of drive-by shootings who pose a danger to the community or a risk of flight, until trial, so long as the detention continues to be of a regulatory rather than a punitive nature. Similarly, the government has a compelling interest, a legitimate and substantial interest, and a rational basis for detaining someone prior to trial where there is a probable cause finding of murder one or assault with intent to kill while armed, and a finding by clear and convincing evidence that she or he is likely to flee or poses a danger to the community. Such detention may continue as long as it is regulatory and not punitive. *De Veau supra,* 454 A.2d at 1312–13 (citing *United States v. Edwards*, 430 A.2d 1321, 1332–33 (D.C.1981) (en banc)). Hence, on the face of § 23–1325(a), we see no equal protection problem. Moreover, because Ms. McPherson has not challenged § 23–1325(a) as applied to her, we need not decide whether her detention is no longer regulatory but punitive.[4]

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*

---

3. Under *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), the equal protection guarantee, as it pertains to the District of Columbia, is found in the Fifth Amendment due process clause. *See also Adarand Constructors, Inc. v. Pena,* —— U.S. ——, ——, 115 S.Ct. 2097, 2107, 132 L.Ed.2d 158 (1995).

4. "[P]retrial detention orders ... are open to periodic review and modification." *Kleinbart, supra,* 604 A.2d at 866. Such review and modification may take place in the context of D.C.Code § 23–102 which requires indictment within nine months of pretrial commitment, or Super. Ct. Crim. R. 48(b) under which the trial court may

STEADMAN, Associate Judge, concurring:

I am in complete agreement with the analysis of the statutory issue contained in Part I of the majority opinion. I think, however, that the result in Part II can be reached simply by an application of the crucial fact that appellant here is being held without bail under D.C.Code § 23–1325(a) (1996) not only because she poses a danger to the community but also because she presents an unacceptable risk of flight, a distinct alternative ground for detention.[1] Therefore, if she can be held on the ground of risk of flight against a facial constitutional challenge to the statute, the trial court's detention order must be affirmed.[2]

*United States v. Salerno*, 481 U.S. 739, 749, 107 S.Ct. 2095, 2102, 95 L.Ed.2d 697 (1987), makes clear that, as far as substantive due process is concerned, "an arrestee may be incarcerated until trial if he presents a risk of flight."[3] Thus, appellant's detention without set time limits on the basis of risk of flight does not offend substantive due process, and we need not here reach the issue whether the independent basis of dangerousness may do so.

With respect to the equal protection argument, it seems to me that since appellant's indeterminate detention for risk of flight does not offend substantive due process, her detention on that ground cannot infringe on any "fundamental right." Therefore, I look to the so-called rational basis test as the standard of review. *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982).[4] In order to meet this test, the addition of assault with intent to kill while armed (AWIKWA) to § 1325(a) must "bear[ ] some fair relationship to a legitimate public purpose." *Id.* Plainly, AWIKWA, with its component of an actual intent to kill, bears a close relationship in seriousness to murder in the first degree, and these crimes may require a longer period of time to prepare for trial. While certain other offenses involving risk of death are not included, they are arguably distinguishable,[5] and, in any event, "a statute is not invalid under the Constitution because it might have gone further than it did." *Katzenbach v. Morgan*, 384 U.S. 641, 657, 86 S.Ct. 1717, 1727, 16 L.Ed.2d 828 (1966) (quoting *Roschen v. Ward*, 279 U.S. 337, 339, 49 S.Ct. 336, 336, 73 L.Ed. 722 (1929)).

dismiss an indictment or information "if there is unnecessary delay in bringing a defendant to trial."

1. The majority opinion quotes the trial court's specific reference to appellant's prior Bail Reform Act violation and her incentive here not to appear in the face of a potential life sentence.

2. The government did not address the possibility of such a disposition until oral argument on this appeal. Ordinarily I might be chary of relying upon such a belated assertion, although it is true that a trial court order can be affirmed on any legitimate ground. However, I am mindful of the fact that we are here asked to address constitutional issues, which courts are reluctant to decide unless directly and necessarily presented, as well as the fact that we do not issue advisory opinions, even at the behest of all parties. *See District of Columbia v. Wical Ltd. Partnership,* 630 A.2d 174, 182 (D.C.1993).

3. *See also De Veau v. United States,* 454 A.2d 1308, 1313 (D.C.1982), *overruled in part by Lynch v. United States,* 557 A.2d 580, 581–82 (D.C.1989) (en banc) ("There is no constitutional right to bail."). While *De Veau* involved first-degree murder arrestees, *id.* at 1310, the defendants in *Salerno* were indicted for a number of violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), including conspiracy to commit murder, but not murder itself, 481 U.S. at 743, 107 S.Ct. at 2099. No need exists here to determine the sweep of the power to hold arrestees pending trial as applied to lesser sorts of offenses than murder or offenses of roughly comparable severity.

4. The briefs of neither party address whether the so-called intermediate standard of review might be applicable and I, therefore, do not consider that possibility here.

5. As the government points out, assault with intent to murder while armed is a special category reserved, as a practical matter, for cases involving sixteen and seventeen-year-old defendants tried as adults. *See United States v. Hobbs,* 594 A.2d 66, 67–69 (D.C.1991). Similarly, murder in the second degree, unlike AWIKWA, does not necessarily require a specific intent to kill. *See Comber v. United States,* 584 A.2d 26, 38–39 (D.C.1990) (en banc).