*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 22-BG-457

IN RE DANA A. PAUL, RESPONDENT.

A Member of the Bar
of the District of Columbia
(Bar Registration No. 490142)

On Report and Recommendation
of the Board on Professional Responsibility
(Disciplinary Docket No. 2019-D199)
(Board Docket No. 19-BD-63)

(Submitted January 24, 2023                    Decided April 20, 2023)

*Dana A. Paul*, pro se.

*Hamilton P. Fox* and *Myles V. Lynk* were on the brief for the Office of Disciplinary Counsel.

Before HOWARD and ALIKHAN, *Associate Judges*, and FISHER, *Senior Judge*.

ALIKHAN, *Associate Judge*: After respondent Dana A. Paul disclosed client confidences in a disciplinary complaint that he filed against his former client, N.E., the District of Columbia Office of Disciplinary Counsel investigated him for violating multiple District of Columbia Rules of Professional Conduct. The Board on Professional Responsibility concluded that he had violated D.C. R. Prof. Conduct 1.6(a) and recommended that we impose a 90-day suspension. Before this

court, Mr. Paul argues that D.C. Bar R. XI, § 19(a) immunizes him from disciplinary action stemming from his complaint, that his disclosures do not fall under Rule 1.6's protections and were necessary to defend himself against an earlier disciplinary action that N.E. had filed against him, and that the Board's recommended 90-day suspension was unwarranted. We disagree that he is immune from discipline, conclude that he violated Rule 1.6(a), and order a 30-day suspension.

## I.    Factual Background and Procedural History

### A.    Factual Background

The Hearing Committee and the Board made the following findings of fact, most of which are undisputed. In 2014 and 2015, Mr. Paul, a member of the D.C. Bar, represented N.E. and her husband in a matter in a Maryland court. He represented them again in 2017 when they sued their realtor and others, also in a Maryland court, alleging a "botched" real estate deal.

Mr. Paul and his clients began to disagree about the case, and, a few months later, he resigned. In April 2018, N.E. and her husband reported Mr. Paul to the Attorney Grievance Commission of Maryland and the District of Columbia Office of Disciplinary Counsel. They alleged that he had improperly retained an expert witness, had failed to communicate with N.E. and her husband, had not prepared them for depositions, and had entered unauthorized stipulations on their behalf.

In May 2018, Mr. Paul responded to both complaints. In his response to N.E.'s complaint in the District and at Disciplinary Counsel's request, Mr. Paul submitted his entire client file for N.E. Three months later, while Disciplinary Counsel was investigating N.E.'s complaint against Mr. Paul, he filed a disciplinary complaint against N.E., who is also a member of the D.C. Bar. Mr. Paul included the case number of the matter against him in his disciplinary complaint, and he disclosed information that N.E. had shared with him when he was her attorney. The Office of Disciplinary Counsel eventually dismissed N.E.'s complaint against Mr. Paul and requested that N.E. respond to Mr. Paul's complaint against her. After N.E. responded, Mr. Paul replied, noting: "I am only filing this grievance because of the grievance [N.E.] filed against me." In his reply, Mr. Paul included additional information that he had learned during his 2017 representation of N.E. and her husband.

## B. Procedural History

In June 2022, the Office of Disciplinary Counsel instituted disciplinary proceedings against Mr. Paul, alleging that he had violated D.C. R. Prof. Conduct 1.6 and 8.4(d). First, the Office of Disciplinary Counsel alleged that in his response to N.E.'s grievance, his disciplinary complaint against N.E., and his reply to N.E.'s response, Mr. Paul had disclosed client confidences or secrets, which had been unnecessary to establish a defense to the disciplinary charge against him and

therefore violated Rule 1.6.  Second, it alleged that Mr. Paul's retaliatory disciplinary complaint against N.E. seriously interfered with the administration of justice in violation of Rule 8.4(d).

After a hearing in March 2020, an Ad Hoc Hearing Committee concluded that Mr. Paul had violated both rules and recommended that he receive a 90-day suspension.  As to Rule 1.6, the Hearing Committee determined that Mr. Paul had knowingly revealed N.E.'s confidences when he intentionally gave private information about her—information he only knew because he had represented her—to Disciplinary Counsel.  It reached this conclusion only with respect to Mr. Paul's disciplinary complaint against N.E. and his subsequent reply in that matter, finding that those disclosures were offensive (rather than defensive) in nature and not reasonably necessary for Mr. Paul to defend himself against N.E.'s accusations.  The Hearing Committee did not find a Rule 1.6 violation with regard to the disclosures that Mr. Paul had made in response to N.E.'s complaint against him, concluding that those were necessary for him to defend himself.  *See* D.C. R. Prof. Conduct 1.6(e)(3) (allowing reasonable disclosures to defend against a disciplinary action).

As to Rule 8.4(d), the Hearing Committee concluded that Mr. Paul's retaliatory complaint seriously interfered with the administration of justice because it was improper, bore directly on the judicial process, and affected the process "in more

than a *de minimis* way." *In re Hopkins*, 677 A.2d 55, 61 (D.C. 1996). The Hearing Committee recommended a 90-day suspension after considering (1) the seriousness of Mr. Paul's conduct; (2) prejudice to the client; (3) whether the conduct involved dishonesty; (4) violation of other disciplinary rules; (5) Mr. Paul's disciplinary history; (6) whether Mr. Paul had acknowledged his wrongful conduct; and (7) mitigating circumstances. *See In re Daniel*, 11 A.3d 291, 300 (D.C. 2011).

Mr. Paul filed exceptions to each of these conclusions. In June 2022, the Board issued its report and recommendation. The Board agreed with the Hearing Committee's conclusion that Mr. Paul had violated Rule 1.6 when he disclosed N.E.'s confidences in his complaint against N.E. and his subsequent reply in that matter. The Board also determined that D.C. Bar. R. XI, § 19(a) did not provide Mr. Paul absolute immunity from attorney discipline—as opposed to civil liability—for complaints submitted to Disciplinary Counsel, because such immunity was not consistent with the plain text of the rule, and because a contrary reading would conflict with other D.C. Rules of Professional Conduct. Finally, the Board concluded that Mr. Paul had not violated Rule 8.4(d) because his conduct did not impact the judicial system "in more than a *de minimis* way." *In re Hopkins*, 677 A.2d at 61.

Despite finding fewer violations than the Hearing Committee, the Board adopted the Hearing Committee's recommendation of a 90-day suspension. In so doing, it explained that Mr. Paul's disciplinary complaint against N.E. was retaliatory and egregious and thus warranted a 90-day suspension even without a finding that Mr. Paul had violated Rule 8.4(d).

Mr. Paul took exception to several of the Board's conclusions and its recommended sanction, and he filed a brief in this court. The Office of Disciplinary Counsel did not file exceptions, but it filed a brief supporting the Board's report and recommendation.

## II.  Discussion

We "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and [we] adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). We review the Board's legal determinations de novo. *In re Samad*, 51 A.3d 486, 495 (D.C. 2012) (per curiam).

Before this court, Mr. Paul argues that (1) D.C. Bar R. XI, § 19(a) immunizes him from disciplinary action stemming from the complaint he filed against N.E.; (2) he did not disclose information protected by Rule 1.6 and, even if he did, such

disclosure was necessary to defend himself against the earlier disciplinary action N.E. had filed against him; and (3) a 90-day suspension was unwarranted. We take each in turn.

### A. Immunity Conferred by D.C. Bar Rule XI, § 19(a)

In the District of Columbia, an individual may submit allegations of an attorney's misconduct to the Board or to the D.C. Office of Disciplinary Counsel. D.C. Bar R. XI, § 6(a)(2), 8(a).[1] These allegations may come through formal complaints or other sources, *id.* § 6(a)(2), and they may come from other lawyers, *see* D.C. R. Prof. Conduct 8.3.

All complaints submitted to Disciplinary Counsel or the Board are "absolutely privileged, and no claim or action predicated thereon may be instituted or maintained." D.C. Bar R. XI, § 19(a). Additionally, "[m]embers of the Board, its employees," and other similarly situated individuals are "immune from disciplinary

---

[1] This court has disciplinary jurisdiction over, among others, "members of the District of Columbia Bar, all persons appearing or participating pro hac vice in any proceeding . . . , and all persons who have been suspended or disbarred." D.C. Bar R. XI, § 1(a).

complaint . . . and from civil suit for any conduct in the course of their official duties." *Id.*[2]

Mr. Paul argues that Section 19(a)'s proviso that disciplinary complaints are "absolutely privileged, and [that] no claim or action predicated thereon may be instituted or maintained" means that an attorney who submits a disciplinary complaint is immune from both litigation *and disciplinary action* related to the complaint. In contrast, the Board concluded, and the Office of Disciplinary Counsel argues, that this language immunizes attorneys who file complaints only from suit but not from disciplinary action. This is so, they reason, because the next sentence of Section 19(a) provides immunity from both civil suit and disciplinary action, but only to a select group of people: "[m]embers of the Board, its employees," and other

---

[2] In full, D.C. Bar R. XI, § 19(a) reads:

> *Immunity.* Complaints submitted to the Board or Disciplinary Counsel shall be absolutely privileged, and no claim or action predicated thereon may be instituted or maintained. Members of the Board, its employees, members of Hearing Committees, Disciplinary Counsel, and all assistants and employees of Disciplinary Counsel, all persons engaged in counseling, evaluating or monitoring other attorneys pursuant to a Board or Court order or a diversion agreement, and all assistants or employees of persons engaged in such counseling, evaluating or monitoring shall be immune from disciplinary complaint under this rule and from civil suit for any conduct in the course of their official duties.

similarly situated individuals. Thus, in their view, an attorney who commits misconduct in pursuing a disciplinary complaint against another attorney may not be sued, but he could face disciplinary action for his misdeeds.

We conclude that the Board has the better argument. We begin with the text of the provision: "Complaints submitted to the Board or Disciplinary Counsel shall be *absolutely privileged*, and *no claim or action predicated thereon may be instituted or maintained*." D.C. Bar R. XI, § 19(a) (emphases added). "In interpreting a statute or rule, we are mindful of the maxim that we must look first to its language; if the words are clear and unambiguous, we must give effect to its plain meaning." *In re Greenspan*, 910 A.2d 324, 335 (D.C. 2006) (brackets omitted) (quoting *McPherson v. United States*, 692 A.2d 1342, 1344 (D.C. 1997)). "Like the rule for statutory construction, 'words of a [rule] should be construed according to their ordinary sense and with the meaning commonly attributed to them.'" *Id.* (alteration in original) (quoting *Washington v. United States*, 884 A.2d 1080, 1096 (D.C. 2005)).

Black's Law Dictionary defines "absolute privilege" as "[a] privilege that immunizes an actor from *suit*, no matter how wrongful the action might be, and even though it is done with an improper motive." *Absolute Privilege*, Black's Law Dictionary (11th ed. 2019) (emphasis added); *see In re Spikes*, 881 A.2d 1118, 1124 (D.C. 2005) (relying on Black's Law Dictionary to interpret "absolute[] privilege[]"

in Section 19(a)). The ordinary meaning of "absolutely privileged," then, is an immunity from litigation—from "suit"—not from consequences outside the courtroom. This is consistent with how we have construed this term previously. *See In re Nace*, 490 A.2d 1120, 1124 (D.C. 1985) (explaining that immunity under D.C. Bar R. XI, § 19(a) meant that an individual "could not maintain any action against [a would-be defendant] on a claimed right under District of Columbia law in the Superior Court of the District of Columbia"). It is also consistent with how our sister jurisdictions treat "absolute privilege" in analogous circumstances. *See, e.g., Att'y Grievance Comm'n of Md. v. Frost*, 85 A.3d 264, 278 n.14 (Md. 2014) ("Absolute privilege is a broad defense to tort claims, including tort claims related to statements made in connection to pending [disciplinary] actions . . . ; however, we confirm that it is not a defense to claims of unprofessional conduct." (citation omitted)).[3]

---

[3] *See also, e.g., Loigman v. Twp. Comm. of Twp. of Middletown*, 889 A.2d 426, 438 (N.J. 2006) ("The litigation privilege does not immunize an attorney from disciplinary sanctions . . . ."); *Krouse v. Bower*, 20 P.3d 895, 901 n.1 (Utah 2001) ("We note here that although an attorney is normally absolutely immune from civil liability for defamatory statements made in the course of a judicial proceeding, the privilege does not prevent professional discipline against the attorney for such conduct in deserving circumstances."); *Kirschstein v. Haynes*, 788 P.2d 941, 950 (Okla. 1990) (explaining that the absolute privilege for statements made in the course of judicial or quasi-judicial proceedings "would not protect an attorney from suffering professional discipline because of unethical conduct"); *Selby v. Burgess*, 712 S.W.2d 898, 900 (Ark. 1986) (noting that although absolute privilege "prohibit[s] an attorney from being subject to litigation" based on defamatory communications made during judicial proceedings, "it will not make him immune

The rule's context confirms the natural reading of its text. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) ("[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" (second alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *Webb v. D.C. Dep't of Emp. Servs.*, 204 A.3d 843, 849 (D.C. 2019) ("Statutory construction generally demands reading a statute in its entirety, and a 'statute should be interpreted as a harmonious whole.'" (quoting *Stevens v. D.C. Dep't of Health*, 150 A.3d 307, 316 (D.C. 2016))). Specifically, the second sentence of Section 19(a) confers a broader immunity than the first, directing that Board members and similarly situated individuals "shall be immune from disciplinary complaint under this rule *and* from civil suit for any conduct in the course of their official duties." D.C. Bar R. XI, § 19(a) (emphasis added). The inclusion of immunity from disciplinary complaint, in addition to immunity from civil suit, for this set of individuals in Section 19(a)'s second sentence is strong evidence that the first sentence does not provide a similar immunity to attorney-complainants like Mr. Paul. That is because, "[w]here [drafters] include[] particular language in one section of a statute but omit[] it in

from professional discipline . . . when it is appropriate" (citation omitted)); *Theiss v. Scherer*, 396 F.2d 646, 649-50 (6th Cir. 1968) (implying that an attorney could be "subject to disciplinary action by the court and by his bar association" for statements he made during a judicial proceeding despite "[t]he rule of absolute privilege").

another . . . , it is generally presumed that [they] act[] intentionally and purposely in the disparate inclusion or exclusion." *Bd. of Trs. of Univ. of D.C. v. Joint Rev. Comm. on Educ. in Radiologic Tech.*, 114 A.3d 1279, 1283 (D.C. 2015) (fifth alteration in original) (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)); *see Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019) ("Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." (quoting *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015))). This presumption operates with as much force in interpreting a rule as it does in interpreting a statute. *See In re R.F.H.*, 354 A.2d 844, 845 n.2 (D.C. 1976) ("Regulations generally are construed by the same rules of statutory construction as are statutes.").

Other strong contextual indicators are found in the D.C. Rules of Professional Conduct, several provisions of which specifically contemplate that attorneys may be disciplined for actions they take before the Office of Disciplinary Counsel or the Board. For example, Rule 8.3 allows a lawyer to report another lawyer's misconduct, but not if doing so requires disclosing information that is otherwise protected by Rule 1.6 (like the information at issue here). D.C. R. Prof. Conduct 8.3(c). An attorney also violates the rules if he "[s]eek[s] . . . disciplinary charges solely to obtain an advantage in a civil matter." D.C. R. Prof. Conduct 8.4(g). To provide a third example, Rule 1.6 provides attorneys with a limited right to disclose a client's

confidences or secrets if necessary to defend himself against accusations of wrongdoing. D.C. R. Prof. Conduct 1.6(e)(3). But a lawyer violates that rule if the disclosure is "greater than the lawyer reasonably believes is necessary to vindicate [his] innocence." *Id.*, cmt. 25. If the first sentence of Section 19(a) conferred immunity from disciplinary action, it would render these rules nugatory. *Cf. Thomas v. D.C. Dep't of Emp. Servs.*, 547 A.2d 1034, 1037 (D.C. 1988) ("A basic principle is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous.").

Given the clarity of the text and context, we need not resort to additional tools of statutory interpretation. *See In re Greenspan*, 910 A.2d at 335-36. We do, however, pause to respond to Mr. Paul's arguments. First, Mr. Paul argues that "absolute[] privilege means the same thing as absolute immunity." That is true as far as it goes, but it does not answer the question: absolute immunity from what? For the reasons above, we conclude that it is absolute immunity from *suit*, not from disciplinary action. To the extent Mr. Paul is arguing that the absolute immunity conferred in the first sentence of Section 19(a) operates like the absolute immunity afforded to judicial officers or prosecutors, we note that such immunity similarly is an immunity from civil suit and not from attorney discipline. *See Imbler v. Pachtman*, 424 U.S. 409, 428-29 (1976) (explaining that "the immunity of prosecutors from liability in suits under [42 U.S.C. §] 1983 does not leave the public

powerless to deter misconduct or to punish that which occurs," including through "professional discipline by an association of his peers"); *see also, e.g.*, *Beck v. Phillips*, 685 N.W.2d 637, 643 n.2 (Iowa 2004) ("Prosecutors are not completely beyond reproach even when absolute immunity attaches. The doctrine does not foreclose professional discipline or criminal punishment."); *Chicopee Lions Club v. Dist. Att'y for Hampden Dist.*, 485 N.E.2d 673, 678 (Mass. 1985) ("[A]bsolute immunity from civil suit does not render the public entirely powerless to deter prosecutorial misconduct: elections and bar discipline proceedings are available mechanisms which may serve to check an overzealous district attorney.").

Next, Mr. Paul contends that the Office of Disciplinary Counsel "has never charged an attorney for filing a grievance against another attorney" and claims this is evidence that Section 19(a) confers immunity from disciplinary action for attorney-complainants. Even if this were true (Mr. Paul's citation does not support his claim), this court—which has the final word on attorney discipline—has certainly suggested that it is possible. *In re Howard*, 940 A.2d 130, 131 n.1 (D.C. 2007) (per curiam) (issuing reciprocal discipline and noting that a respondent's improper threats to report opposing counsel to disciplinary authorities would have violated Rule 8.4(g) if they had occurred in the District). That this situation may be rare does not mean that Section 19(a) forecloses it.

Finally, Mr. Paul argues that without immunity from disciplinary action, attorneys will not "report ethical misconduct [for] fear that the [Office of Disciplinary Counsel] will charge them for filing a grievance in the future." This overstates the issue. Attorneys are encouraged to report professional misconduct where they "know[] that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." D.C. R. Prof. Conduct 8.3(a). But the rule "does not require disclosure of information otherwise protected by Rule 1.6 or other law." D.C. R. Prof. Conduct 8.3(c). And, more generally, such a report cannot be "solely to obtain an advantage in a civil matter." D.C. R. Prof. Conduct 8.4(g). As the comments to Rule 8.3 explain, "[a] measure of judgment is . . . required in complying with the [rule]." D.C. R. Prof. Conduct 8.3, cmt. 3. We trust that attorneys will exercise that judgment by not violating the Rules of Professional Conduct in the course of filing a disciplinary complaint against another attorney. And if the attorney does violate the rules, we see no policy justification for relieving him of the consequences of his actions.

Accordingly, we hold that Section 19(a) does not immunize an attorney-complainant from professional discipline if he violates the Rules of Professional Conduct in the course of filing or pursuing his disciplinary complaint against another attorney.

## B.     Protection Under D.C. Rule of Professional Conduct 1.6(e)(3)

Mr. Paul next argues that he did not violate Rule 1.6 because the information he disclosed was not N.E.'s confidence or secret, D.C. R. Prof. Conduct 1.6(a), (b), and because his disclosures were "reasonably necessary to establish a defense to a . . . disciplinary charge . . . against [him]," D.C. R. Prof. Conduct 1.6(e)(3).  We disagree.  Rule 1.6 explicitly prohibits the disclosure of a client's "secret," which is defined as information, "the disclosure of which would be embarrassing" or "detrimental" to the client.   D.C. R. Prof. Conduct 1.6(b).   Mr. Paul shared information that he alleged illustrated N.E.'s criminal and civil liability—something that would certainly be detrimental to her and therefore fall squarely within Rule 1.6's definition of a "secret."

In considering his second argument, the Hearing Committee and the Board differentiated between the disclosures Mr. Paul had made in the course of responding to N.E.'s complaint about him and those in the course of pursuing his own complaint against N.E., concluding that the former were protected by Rule 1.6(e)(3) but the latter were not.

We agree with that differentiation.  Mr. Paul's disciplinary complaint against N.E. and his reply to N.E.'s response to his complaint were part of an offensive action against N.E. and not necessary to defending against the complaint she had

filed against him. Indeed, by the time Mr. Paul submitted these materials, he had already responded to the allegations in N.E.'s complaint. In his disciplinary complaint, however, he went on to argue that N.E. "[wa]s not mentally competent to be a member" of the D.C. Bar and "should [not] be allowed to practice law." Mr. Paul attached to his complaint documents that N.E. had sent him when he represented her, which he alleged proved her criminal conduct and provided a civil cause of action against her. He also stated that he "filed the grievance against her," because she "is dishonest." His complaint is plainly read as one that is offensive in nature and not necessary to or connected with his own defense. Accordingly, his disclosures related to his disciplinary complaint against N.E. are not protected by Rule 1.6(e)(3).

## C.    Sanction

The Board agreed with the Hearing Committee's recommendation that Mr. Paul receive a 90-day suspension. While the Board's recommended sanction comes to us with a "strong presumption in favor of its imposition," *In re Hallmark*, 831 A.2d 366, 371 (D.C. 2003), the ultimate responsibility of "imposing sanctions rests with this court in the first instance," *In re Godette*, 919 A.2d 1157, 1164 (D.C. 2007) (quoting *In re Temple*, 629 A.2d 1203, 1207 (D.C. 1993)). In so doing, we must ensure that we do not "foster a tendency toward inconsistent dispositions

for comparable conduct" and that the sanction is not "otherwise . . . unwarranted." D.C. Bar R. XI, § 9(h)(1).

We conclude that a 90-day suspension is outside the range of discipline for conduct comparable to that of Mr. Paul's. In prior cases where attorneys violated Rule 1.6, we have imposed public censures or informal admonitions. *In re Ponds*, 876 A.2d 636, 637 (D.C. 2005) (imposing a public censure for improperly disclosing confidential information in a motion to withdraw as counsel); *In re Gonzalez*, 773 A.2d 1026, 1027, 1032 (D.C. 2001) (imposing an informal admonition when the respondent revealed secret information about a client in his motion to withdraw and did not take steps to minimize the possibility of harm); *In re Tun*, 286 A.3d 538, 540 (D.C. 2022) (noting that the respondent had received an informal admonition for improperly disclosing a client's confidences in an earlier disciplinary proceeding); *In re Osemene*, 277 A.3d 1271, 1271-72 (D.C. 2022) (per curiam) (publicly censuring the respondent for violating Rules 1.5(b) and 1.6(a)).

A 90-day suspension is significantly more serious, and the cases cited by the Hearing Committee—*In re Koeck*, 178 A.3d 463 (D.C. 2018) (per curiam), and *In re Rosen*, 470 A.2d 292 (D.C. 1983)—do not persuade us that it is appropriate here. In *In re Koeck*, the respondent received a 60-day suspension with a fitness requirement. 178 A.3d at 464. The respondent had committed "four separate rule violations" and disseminated private information to the U.S. Attorney's Office for

the Northern District of Illinois, the U.S. Securities and Exchange Commission, and the government of Brazil. *Id.* at 463. In *In re Rosen*, we issued a six-month suspension after considering the respondent's violation of Rule 1.6 along with other serious violations including an intentional failure to carry out client objectives. 470 A.2d at 301-02. In both of those cases, the conduct at issue was more egregious than that at issue here.

We do agree, however, with the Board's determination that the retaliatory nature of Mr. Paul's complaint is particularly problematic and therefore warrants a suspension of some length.[4] *See In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013) (considering "(1) the seriousness of the conduct, (2) prejudice to the client, (3) whether the conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating circumstances" as non-exhaustive factors in determining the appropriate sanction for attorney misconduct). Mr. Paul wrote to Disciplinary Counsel that he "only fil[ed] this Grievance because of the Grievance [N.E. had] filed against" him. He now denies that his complaint was retaliatory and maintains that he filed it only because N.E. is

---

[4] We also note that Mr. Paul has a disciplinary history in Maryland. *Att'y Grievance Comm'n of Md. v. Paul*, 31 A.3d 512 (Md. 2011); *Att'y Grievance Comm'n of Md. v. Paul*, 187 A.3d 625 (Md. 2018).

a "menace to the legal profession."  But the language of his complaint and its timing—only three months after N.E.'s complaint against him—suggest to us that the greatest impetus for Mr. Paul's complaint was his frustration with N.E. for filing a complaint against him.  We adopt the Board's finding on this point, consider the complaint to be retaliatory and serious conduct, and conclude that a 30-day suspension is appropriate.

## III.   Conclusion

For the foregoing reasons, Mr. Paul is suspended from the practice of law in the District of Columbia for 30 days.  For purposes of reinstatement, his suspension will not begin to run until he files an affidavit that fully complies with the requirements of D.C. Bar R. XI, § 14(g).

*So ordered.*